UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

B.J.S., Individually and on behalf of
N.S., a child with a disability,

        Plaintiff,
   v.

THE STATE EDUCATION DEPARTMENT/THE
UNIVERSITY OF THE STATE OF NEW YORK,
PAUL F. KELLY, State Review Officer,
RICHARD P. MILLS, Commissioner of Education,
SPRINGVILLE-GRIFFITH INSTITUTE CENTRAL
SCHOOL DISTRICT BOARD OF EDUCATION,

        Defendants.

**REPORT**
**and**
**RECOMMENDATION**

**08-CV-513A(F)**

APPEARANCES

APPEARANCES:  B.J.S., *Pro Se*
       Springville, New York  14141

       ANDREW M. CUOMO
       New York State Attorney General
       Attorney for Defendants State Education Department,
       Paul F. Kelly and Richard P. Mills
       DARREN LONGO,
       Assistant New York State Attorney General, of Counsel
       350 Main Street, Suite 300A
       Buffalo, New York  14202

       HODGSON RUSS, LLP
       Attorneys for Springville-Griffith Central School District
       PAUL I. PERLMAN,
       RYAN L. EVERHART, of Counsel
       140 Pearl Street, Suite 100
       Buffalo, New York  14202

**JURISDICTION**

By order of June 17, 2009 (Doc. No. 22), Hon. Richard J. Arcara referred this

action to the undersigned for all pretrial matters.  The case is presently before the court

on Defendants, The State Education Department, The University of the State of New

York, Paul F. Kelly, State Review Officer, and Richard P. Mills, Commissioner of Education's ("the State Defendants") motion to dismiss filed June 12, 2009 (Doc. No. 19).

## BACKGROUND AND FACTS[1]

Plaintiff, B.J.S. ("B.J.S." or "Plaintiff") commenced this action by filing a complaint on July 10, 2008 alleging on behalf of Plaintiff and her child, N.S. ("N.S."), then enrolled in Defendant Springville-Griffith Institute Central School District ("the School District"), that the School District denied N.S. a free and appropriate public education ("FAPE") for the 2006-2007 school year required under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, *et seq.*, ("the IDEA" or "the Act"). Specifically, Plaintiff requests annulment of an administrative review decision by Mr. Paul T. Bumbalo, an Independent Hearing Officer ("IHO"), a non-party, and a decision on appeal by Defendant Paul F. Kelly, a State Review Officer appointed by Defendant New York State Department of Education ("the SRO" or "SRO Kelly"), rendered March 10, 2008, which overruled the prior IHO's decision, based on the SRO's finding that the relief requested for Plaintiff and N.S. was moot. Plaintiff also alleges that the SRO improperly remanded the appeal to the IHO for testimony regarding N.S.'s need for "pendency services," and that the IHO and SRO unlawfully directed an evaluation of N.S.'s disability's effect upon N.S.'s educational needs without Plaintiff's consent. Plaintiff claims the SRO's determination was arbitrary and capricious, and was based

---

[1] Taken from the pleadings and papers filed in the instant action.

on an erroneous application of the Defendant Commissioner of Education's regulations governing special education services required to be provided under the Act. A copy of the SRO's decision is attached to the Complaint ("State Review Officer Decision").

Plaintiff also claims damages for alleged due process violations by the School District, retaliation by the SRO based on the SRO's alleged hostility against parents, including Plaintiff, of disabled children who seek redress under the Act, and for pain, suffering and emotional distress. Plaintiff maintains that as a result of Defendants' violations of the Act, N.S. has been deprived of an ability to meet "state learning standards," occupation and vision therapy, and counseling and speech services, and suffers "anger, frustration and resistence to the learning environment" as a result of discriminatory treatment by the School District's staff causing N.S. emotional, social, and academic harm. Plaintiff specifically alleges that the School District denied N.S. an FAPE and that the individual education plan ("IEP") previously formulated for N.S. by the School District's Committee on Special Education ("CSE") was improperly modified. Plaintiff also alleges Defendants violated the parent's right to full participation in the CSE which formulated N.S.'s IEP. Plaintiff seeks $10 million in compensatory damages and punitive damages based on the alleged violations of the Act, $5 million in punitive damages based on Plaintiff's retaliation and due process claims against the School District and SRO Kelly, and an order granting N.S. pendency status.[2]

In lieu of an answer, State Defendants moved to dismiss pursuant to Fed.R.Civ.P. 12(b)(1), (2), (5), and (6), (Doc. No. 19) ("State Defendants' motion"),

---

[2] During proceedings brought to challenge a disabled child's IEP, unless the local educational agency and parents of the child agree otherwise, the child is entitled to remain in the child's then current educational placement. 20 U.S.C. § 1415(j).

together with a declaration of Howard S. Beyer, assistant counsel, Office of Counsel for Defendant New York State Education Department (Doc. No. 20) ("Beyer Declaration"), and a Memorandum of Law (Doc. No. 21) ("State Defendants' Memorandum"). On July 6, 2009, Plaintiff filed a Response to Motion to Dismiss (Doc. No. 23) ("Plaintiff's Response") together with Exhibits A - Q ("Plaintiff's Exh(s). __"). On September 3, 2009, State Defendants filed a Reply Memorandum of Law in Support of Motion to Dismiss (Doc. No. 34) ("State Defendants' Reply Memorandum").

At a hearing on State Defendants' motion conducted before the undersigned on September 10, 2009 (Doc. No. 36), State Defendants withdrew that part of the motion directed to an alleged lack of personal jurisdiction and proper service based on Plaintiff's asserted failure to timely serve State Defendants, in accordance with Fed.R.Civ.P. 4(m), and the court permitted Plaintiff to file a supplemental memorandum in opposition to the State Defendants' motion to dismiss directed to the motion under Fed.R.Civ.P. 12(b)(1) and (6).[3] On October 1, 2009, Plaintiff filed a Supplemental Response regarding Defendant's [*sic*] Motion to Dismiss (Doc. No. 37) ("Plaintiff's Supplemental Response") and the Declaration of B.J.S. (Doc. No. 33) ("Plaintiff's Declaration"). On October 13, 2009, State Defendants filed State Defendants' Reply to Plaintiff's Supplemental Response (Doc. No. 38) ("State Defendants' Reply").[4]

---

[3] The court also considered the parties' responses to the Order of Hon. Michael A. Telesca filed November 21, 2008 (Doc. No. 7) which granted Plaintiff *in forma pauperis* status but reserved decision on whether Plaintiff would be permitted to represent N.S. *pro se*, and Plaintiff's request to seal the records and proceedings in the instant matter. By Decision and Order filed contemporaneously with this Report and Recommendation (Doc. No. 39) the court resolves these issues.

[4] Reading the Complaint reveals no allegation directed to Defendant The University of the State of New York. This entity, headed by a board of regents, acting through the New York Department of Education and Commissioner of Education, is responsible for a broad range of educational functions and regulatory authority under the New York State Constitution. N.Y. Const. art. V, § 4 (McKinney 2006).

Defendant School District took no position on State Defendants' motion.  Further oral argument was deemed unnecessary.

## DISCUSSION

According to Plaintiff's allegations, Plaintiff's claim for relief is based on N.S.'s status as a student with a learning disability enrolled in the School District and Plaintiff's disagreement with the IEP for N.S. for the 2006-2007 school year, established by the School District's Committee on Special Education ("CSE") and as modified by the IHO and SRO on Plaintiff's administrative appeals.[5]  Plaintiff also asserts violations of Plaintiff's due process rights to fully participate in the CSE proceedings related to N.S.'s IEP by the School District and SRO in reviewing N.S.'s IEP, and retaliation by the SRO.

In particular, Plaintiff alleges that the IHO failed to consider Plaintiff's "procedural" issues because of mootness, and erroneously considered only "substantive" issues regarding whether the IEP adopted by the CSE was appropriate, including providing N.S. with "pendency services," for the 2006-2007 school year.  Complaint at 3-4.  Plaintiff also asserts that the IHO failed to properly consider several issues related to N.S.'s IEP, as formulated by the CSE, including, for example, the extent of counseling services to be provided to N.S., the need for additional parent

_____

Thus, the court considers Plaintiff's claims against Defendant State Department of Education, Richard Mills as Commissioner of Education and the SRO, acting as agents of The University of the State of New York, as also pleaded against Defendant The University of the State of New York.

[5]  Plaintiff has filed a prior action, 07-CV-456C, against the State Defendants only challenging N.S.'s IEP for the School District's 2005-2006 school year.  This action has been transferred to Hon. Richard J. Arcara on September 10, 2009 (Doc. no. 35) and referred to the undersigned for all pretrial matters.  A motion similar to State Defendants' instant motion is pending in that case as well as other motions, including Plaintiff's request to file an amended complaint adding the School District as a defendant filed December 8, 2009.  (07-CV-456A(F), Doc. No. 36).

training, reading services, N.S.'s need for a personal aide, a foreign language exemption, and a parent communication log. *Id.* at 4. The IHO also directed the CSE to review N.S.'s performance level, including whether N.S's disability causes his "refusal" to attend class and revise N.S.'s IEP accordingly, and directed that N.S. receive occupational therapy, *id.* at 5, although Plaintiff does not specifically allege this direction to be a ground for relief. Finally, Plaintiff states the IHO improperly directed the School District's CSE evaluate N.S. using a "functional behavioral assessment" to measure the effect of N.S.'s disability on his ability to attend classes. *Id.* Following appeal to the SRO, Plaintiff asserted Defendant SRO Kelly erroneously annulled the IHO's decision because the SRO found the matter to be moot, that the SRO failed to render a timely decision,[6] and improperly remanded the matter to the IHO to develop, through additional testimony, the record on whether N.S. had received pendency services and improperly directed a reevaluation of N.S. within 60 days. *Id.*

In this action, Plaintiff also alleges Defendant SRO Kelly's action in rejecting the IHO disposition as moot was arbitrary and capricious, failed to apply applicable regulations promulgated by Defendant Mills as New York Commissioner of Education,

---

[6] This allegation first appears in Plaintiff's Response at 7. Although federal courts are required to consider allegations incorporated in documents attached to the pleadings or incorporated by reference, *see Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001) (citing Fed.R.Civ.P. 10(c)) (plaintiff's affidavit submitted to EEOC considered part of plaintiff's pleading), Plaintiff's Response is not a pleading. Accordingly, SRO Kelly's alleged bias based on Plaintiff's accusation of the SRO's favoritism toward school boards is not asserted as a basis of relief in this case. Moreover, because of this lack of a fact specific allegation in the Complaint, the court cannot utilize Plaintiff's Response to clarify an ambiguous pleading. *See Pegram v. Herdrich*, 530 U.S. 211, 230 n. 10 (2000) (court may refer to memorandum of law to clarify allegations in complaint) (citing cases).

that SRO Kelly is biased[7] and, along with the School District, Complaint ¶ ¶ 3, 12, retaliated against Plaintiff. Complaint at 5. Particularly, Plaintiff claims that the re-evaluation of N.S. directed by the IHO and SRO is unlawful because it was not requested by Plaintiff nor disputed in Plaintiff's administrative complaint directed to the School District. *Id.* at 8. The Complaint does not specify which state regulations were violated by Defendants, however, several such regulations are referenced by Plaintiff in a letter complaint from Plaintiff to the School District dated February 16, 2008 attached to the Complaint. In that letter, Plaintiff specifies thirty-one deficiencies in the School District's handling of N.S.'s need for special education services, all directed to the CSE's action or inaction in regard to the formulation of N.S.'s IEP.

Additionally, Plaintiff alleged in Plaintiff's letter twenty-five actions to be taken by the School District which, according to Plaintiff, will remedy the numerous deficiencies in the School District's evaluation of N.S.'s special education needs and the corresponding IEP established by the School District for N.S. which N.S.'s parents had requested the IHO direct the School District to adopt, and award attorney fees. As noted, based on the refusal of the IHO to rule in Plaintiff's favor, on appeal to the SRO, Plaintiff alleged similar grounds for reversal of several of the IHO's findings. Because the SRO found against Plaintiff, although based on mootness, a finding disputed by Plaintiff, Plaintiff now asserts those same issues in this action seeking judicial review of the SRO's decision along with several additional allegations directed to the SRO's handling of Plaintiff's administrative appeal, particularly Plaintiff's assertion that SRO

[7] This allegation appears in Plaintiff's Response at 12, 14-15, based on a report by H. Jeffrey Marcus, Esq. assessing data purporting to establish that SRO Kelly nearly always rules in favor of the local school board in appeals to the SRO. Plaintiff's Response Exh. B at 1-2 ("Marcus Report").

Kelly is biased against parents like Plaintiff who "strongly advocate" on behalf of their children with learning disabilities, Complaint at 6, and SRO Kelly's favoritism toward school boards in determining special education appeals as Plaintiff alleges relying, in part, on the Marcus Report.

State Defendants move to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) based on a lack of subject matter jurisdiction, contending that SRO Kelly, as a quasi-judicial review decision-maker, is entitled to absolute immunity. State Defendants' Memorandum of Law at 9-11 (citing cases). Whether a state official is entitled to immunity from federal suit, however, raises a colorable question of federal law within the subject matter jurisdiction of a federal district court. *See In re Stock Exchanges Options Trading Antitrust Litigation*, 317 F.3d 134, 151 (2d Cir. 2003) (stating most immunities, including absolute immunity, are affirmative defenses and do not deprive a court of subject matter jurisdiction). Here, Plaintiff's action is brought pursuant to U.S.C. § 1415(i)(2)(A) which creates a right of action to review the decision of an SRO in federal district court, and 20 U.S.C. § 1415(i)(3) which specifically provides that district courts have subject matter jurisdiction over such actions regardless of the amount in controversy. Thus, whether SRO Kelly is immune from suit under the IDEA is a question within the competence therefore subject matter jurisdiction of this court. Accordingly, the court finds that Defendant SRO is not entitled to dismissal on this ground, and Defendant SRO's motion to dismiss for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1) should be DENIED. Nevertheless, because a party entitled to absolute immunity should not be subject to litigation, *see Dibble v. Fenimore*, 339 F.3d 120, 123 (2d Cir. 2003) ("immunity is intended to shield the defendant not only from an adverse

outcome, but also from the burden of having to go through the litigation process at all"),
the court must consider whether SRO Kelly is as State Defendants maintain, entitled to
dismissal based on absolute immunity.

State Defendants argue that SRO Kelly is entitled to absolute immunity from
liability in this action because, in deciding Plaintiff's appeal of the IHO's determination,
Kelly acted as an administrative official performing a quasi-judicial function. State
Defendants' Memorandum at 9-11. The Plaintiff has not directly responded to this
argument, nor does Plaintiff dispute that SRO Kelly, in deciding Plaintiff's appeal of the
IHO's determination regarding N.S.'s IEP, engaged in a quasi-judicial function.

It is well-established that judicial officers are absolutely immune "for their judicial
acts, even when such acts are in excess of their jurisdiction, and are alleged to have
been done maliciously or corruptly." *Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978)
(internal quotation omitted). Such immunity is "overcome" only for "non-judicial actions,
*i.e.*, actions not taken in the judge's judicial capacity," or "actions, though judicial in
nature, taken in the complete absence of all jurisdiction," but not by allegations of bad
faith or malice, nor because the action at issue was erroneous or exceeded the judge's
authority. *Mirelas v. Waco*, 502 U.S. 9, 11-12 (1991) (internal citations omitted).
However, absolute immunity does not bar actions alleging continuing violations of
federal law, *B.D.S. v. Southold Union Free Sch. Dist.*, 2009 WL 1875942, at *20
(E.D.N.Y. June 24, 2009) (citing *Supreme Court of Virginia v. Consumer's Union of
U.S.A., Inc.*, 446 U.S. 719, 736-37 (1980), and *Collins v. Lippman*, 2005 WL 1367295,
*3 (E.D.N.Y. June 8, 2005)), or requests for prospective declaratory or injunctive relief
limited to an alleged violation of a declaratory decree. *B.D.S.,* 2009 WL 1875942, *19

n. 4 (citing cases). Allegations of bad faith, malice or that the officer acted "'in error . . . or was in excess of his authority,'" *Mirelas*, 502 U.S. at 13 (quoting *Stump*, 435 U.S. at 356), do not overcome absolute judicial immunity. *Id.*

"The doctrine of absolute immunity has been extended 'to certain others who perform functions closely associated with the judicial process,'" including "administrative officials exercising independent quasi-judicial powers." *B.D.S.,* 2009 WL 1875942 at *19 (quoting *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985), and *Montero v. Travis*, 171 F.3d 757, 760 (2d Cir. 1999)). Specifically, the absolute judicial immunity doctrine has also been extended, in the context of a challenge to an IEP and alleged denial of an FAPE, "to a [N.Y.] state review officer [SRO], whose function is to review administrative appeals from decision of impartial hearing officers and render an 'independent decision . . .' under the Act and New York Law." *B.D.S.*, 2009 WL 1875942, at *19 ("Thus, absolute immunity shields state review officers to the same extent it has been found to shield hearing officers and administrative law judges.") (citing cases including *DeMerchant v. Springfield Sch. Dist.*, 2007 WL 495240, at *3-4 (D.Vt. Feb. 9, 2007) (state review official under Vermont law granted judicial immunity from IDEA suit challenging disabled student's IEP), 20 U.S.C. § 1415(g), and N.Y. Education Law § 4404(2)) (bracketed material added).

A careful reading of the Complaint shows Plaintiff's claims seek relief against SRO Kelly based on the alleged erroneous exercise of his authority to provide an impartial review of the decisions by the IHO and CSE with respect to an IEP for N.S. for the 2006-2007 school year. Relevantly, Plaintiff does not request declaratory or injunctive relief against SRO Kelly based on allegations of continuing violations of

federal law, *i.e.*, the IDEA,[8] nor does Plaintiff assert violations of Plaintiff's constitutional

rights pursuant to 42 U.S.C. § 1983, *et. seq*.[9]  Thus, Plaintiff seeks, at most, judicial

review and nullification of SRO Kelly's determination of Plaintiff's administrative appeal

directed to the IEP for N.S. established by the School District, and modified by the IHO,

a retroactive form of relief directed to SRO's past conduct as a quasi-judicial officer in

rejecting Plaintiff's contention on Plaintiff's appeal of the IHO's decision regarding

N.S.'s IEP for the 2006-2007 school year.  *See B.D.S.,* 2009 WL 1875942, at *19 (SRO

entitled to absolute immunity for "claims seeking retroactive relief") (citing cases).

Consequently, SRO Kelly is entitled to absolute immunity against relief sought in the

Complaint as pleaded, including Plaintiff's demand for monetary relief in excess of $10

million to compensate Plaintiff and N.S. for losses and costs, including attorneys fees,

attributable to Defendants' failure to provide N.S. with an FAPE.[10]

---

[8]  As noted, Discussion, *supra*, at 10-11, Plaintiff's unpleaded allegation of bias against SRO Kelly as a denial of Plaintiff's statutory right to an impartial state review based on the Marcus Report data is not alleged as an exception to judicial immunity based on a continuing violation of Plaintiff's rights.  Plaintiff's ability to establish this asserted conclusion of such bias may require reliance upon statistical analysis which also has not been pleaded.  Nevertheless, as no responsive pleading has been filed by State Defendants, Plaintiff may file and serve an amended complaint alleging such bias and continuing violation. *See Thompson v. Carter*, 284 F.3d 411, 415 n. 2 (2d Cir. 2002) (motion to dismiss is not a responsive pleading within meaning of Fed.R.Civ.P. 15(a), and therefore does not terminate plaintiff's right to amend complaint as of right (citing *Barbara v. New York Stock Exchange, Inc.*, 99 F.3d 49, 56 (2d Cir. 1996))). The court takes no position on whether such allegations will withstand a further Fed.R.Civ.P. 12(b)(6) motion particularly whether such alleged bias has continued to adversely affect Plaintiff's interests sufficient to state a claim against SRO Kelly in this action.  *See Consumer's Union of U.S., Inc.,* 446 U.S. at 736-37.

[9]  The IDEA does not prevent assertion of claims under 42 U.S.C. § § 1983 and 1985 based on these provisions.  *See B.D.S.*, 2009 WL 1875942, at *20 (citing cases).  *See also Polera v. Bd. of Ed. of the Newburgh Enlarged City Sch. Dist.,* 288 F.3d 478, 483 n. 5 (citing cases upholding § 1983 claims for violations of IDEA).

[10]  Although Plaintiff alleges SRO Kelly and the IHO improperly directed an evaluation for N.S.'s disability in violation of §1415(b)(3)(B) (requiring notice to the child's parents prior to such evaluation), thus acting beyond the SRO's "jurisdiction," Complaint at 7-8, such allegation is limited to an alleged past error by SRO Kelly (and the IHO), in the course of considering Plaintiff's administrative appeal, in violation of the Act, not a continuing violation of the Act's requirements for which declaratory or equitable relief is

State Defendants' motion, pursuant to Fed.R.Civ.P. 12(b)(6), on the ground that SRO Kelly enjoys absolute judicial immunity should therefore be GRANTED. However, as the matter is before the court for a Report and Recommendation the court alternatively considers whether SRO Kelly's request, as well as the requests by the other State Defendants, for dismissal of Plaintiff's allegations against them for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6), based on the contention that State Defendants are not proper defendants to this action, as part of State Defendants' motion, should be granted.

"On a motion to dismiss or for judgment on the pleadings, [the court] must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." *LaFaro v. New York Cardiothoracic Group, PLLC,* 570 F.3d 471, 475 (2d Cir. 2009) (quoting *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003) (bracketed material added and additional quotation omitted)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* __ U.S. __, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). The factual allegations of the complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Twombly,* 550 U.S. at 570. The court, however, is "not bound to accept as true legal conclusions couched as factual allegations." *LaFaro*, 570 F.3d at 475-76 (citing

---

necessary in order to interdict such potential violations as to future proceedings involving N.S. Nor does Plaintiff allege SRO Kelly was acting wholly beyond his authority in doing so. As such, this claim is barred by absolute immunity.

*Iqbal*, 129 S.Ct. at 1950-51).

In this case, Plaintiff's action seeks review of the decision rendered by SRO Kelly as the SRO who decided Plaintiff's administrative appeal pursuant to 20 U.S.C. §1415(i)(2)(A) ("§ 1415(i)(2)(A)").[11] Thus, whether State Defendants, including SRO Kelly, should be dismissed on this ground turns on whether assuming the truth of Plaintiff's allegations, Plaintiff's action under § 1415(i)(2)(A) states a sufficient "claim for relief," *Twombly*, 550 U.S. at 570, available under the Act against State Defendants. Accepting Plaintiff's allegations as true and giving them the deferential reading required for a *pro se* litigant's pleading, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), Plaintiff asserts that the School District denied an FAPE for N.S, a student who is disabled because of a diagnosed condition and that State Defendants improperly approved this decision, specifically through SRO Kelly's decision as the SRO, and are, along with the School District, therefore equally liable to Plaintiff for the alleged violations of Plaintiff's rights under the Act.  Complaint at 3.

As with other questions arising under the IDEA, whether under the IDEA, involving a claim for judicial review of a challenged IEP, State Defendants are cast as defendants to parent's action pursuant to § 1415(i)(2)(A) requires the court carefully examine the Act's statutory "text and structure," *Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 531 (2007) (*pro se* parent has standing to bring action to enforce IDEA's right to FAPE for disabled child based on proper interpretation of the Act [that] requires a consideration of the entire statutory scheme") (bracketed material added and citing

---

[11]  All "§ ____" references are to 20 U.S.C. § 1400 *et seq.* (West 2005), except for references to 20 U.S.C. § 1401 which are to (West 2008).

*Dolan v. Postal Service*, 546 U.S. 481, 486 (2006)); *Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist.*, *Westchester Co. v. Rowley*, 458 U.S. 176, 179 (1982) (question of IDEA's "statutory interpretation at the heart" of what degree of special education is required to satisfy state's obligation to provide disabled children with an FAPE as required by IDEA).  To determine the issue in this case, *i.e.*, whether Plaintiff's action as pleaded lies against State Defendants, the court is therefore guided by the relevant terms and purposes of the Act.

The Act requires state and local education agencies receiving financial assistance under the Act to establish procedures to assure that children with learning disabilities, as defined in § 1401(3), enrolled in their schools, receive a "free and appropriate public education," § 1401(9)(A)-(C) pursuant to an "individualized education program," for each disabled child.  § 1414(d).  A child's parent, state educational agency or local education agency, including a public board of education, § 1401(19)(A), like the School District, may request an evaluation to determine whether a child is disabled and therefore requires special education and services.  § 1414(a)(1)(A).  An evaluation of a child by a local educational agency under the Act requires a detailed assessment of the child's disability and development by the agency of an IEP for the child, § 1414(b), that is tailored to the child, including a statement of the child's needs, academic and functional goals, measures for the child's progress, and the special education and services to be provided to the child and other related requirements.  § 1414(d).  Development of the IEP, the "centerpiece of the IDEA's educational delivery system," *Murphy v. Arlington Cent. Sch. Dist.  Bd. of Educ.*, 297 F.3d 195, 197 (2d Cir. 2001), is the responsibility of an "IEP Team" comprised of a parent of the child, a

14

regular classroom teacher, a special education teacher and a representative of a local educational agency such as the School District. § 1414(d)(1)(B)(i-iv).

In the case of a parent's disagreement with a disabled child's IEP, the Act requires that the parent file a written "complaint" challenging the child's initial IEP, formulated by the CSE of a local educational agency, or a local educational agency's refusal to modify or change the IEP. §§ 1415(b)(3)(A), (B); (b)(6); (b)(7); (c)(2). The local educational agency is required to respond to this complaint, §1415(c)(2)(B), and the Act requires that, upon request, an impartial hearing be provided by an independent hearing officer ("IHO") to "the parent or the local educational agency involved in the complaint." §1415(f)(1)(A). The IHO is authorized to determine whether the child has received the required FAPE or other related special educational services. §1415(f)(3)(E)(i ) - (ii). A party aggrieved by the IHO's determination on the complaint may appeal to a neutral state official ("the SRO"), a position created by the state receiving financial assistance under the Act, who is authorized to make "findings" and render an "impartial" and "independent decision" regarding the child's entitlement to an FAPE and special educational services, §1415(g); under the Act, the SRO's decision is final. §1415(i)(1)(B).

A party aggrieved by the SRO's findings and determination may seek judicial review of the SRO's decision in a state court of competent jurisdiction or a U.S. district court. §1415(i)(2)(A). Upon its review of the administrative record in the case and, if requested by a party, additional evidence, the court reviews the SRO's decision, and based on a preponderance of evidence, may grant any "appropriate" relief. §1415(i)(2)(C)(i) - (iii). *See also T.M. by J.M. v. Allegany-Limestone Cent. Sch. Dist.*,

2009 WL 3191442, at *2 (W.D.N.Y. Sep't. 30, 2009). In reviewing determinations by an SRO, courts are required to give "due weight" to the underlying administrative proceedings. *Rowley*, 450 U.S. at 202 (1982). In deciding whether a disabled child's IEP resulted from "procedures reasonably calculated to enable the child to receive educational benefits," *Rowley,* 450 U.S. at 207, substantial deference to the expertise in matters of special education is to be accorded by the reviewing court to the underlying proceedings and decisions of the SRO because the courts lacks pertinent "specialized knowledge" in such matters. *T.M. by J.M.*, 2009 WL 3191442, at *2 (citing *Collins v. Bd. of Educ.,* 164 Fed. Appx. 19, 21 (2d Cir. 2006), and *Walczak v. Fla. Union Free Sch. Dist.*, 142 F.3d 119, 129 (2d Cir. 1998)).

In accordance with the obligations imposed by the Act upon states receiving funds under the Act, to provide the child with an FAPE, New York law also requires local school educational agencies within the state, like the School District, acting under regulations promulgated by Defendant Commissioner of Education, to evaluate disabled children who are subject to the requirements of the Act and enrolled in a local school district which receives funding for special education services under the Act, and to formulate an IEP to provide such students with an FAPE. *See* N.Y. Educ. Law § 4402.1.b(1)(a)(b) (McKinney 2009)[12] (local school district required to establish special education committees for the purpose of evaluating disabled or handicapped students and develop an individualized education program of such students). In further conformity with the Act, New York law requires a local school district, or a state

---

[12] Unless otherwise indicated, all references to N.Y. Educ. Law § ____ are to McKinney 2009.

agency,[13] responsible for providing an FAPE to a student with a disability, to appoint an IHO to review a complaint directed to any matter relating to a disabled student's need for special education services.  N.Y. Educ. Law § 4404.1.

New York law also implements the requirement of § 1415(g)(2) that a state educational agency provide for an independent and impartial review of the final decision by an IHO on a parent's complaint regarding a disabled student's special education needs.  *See* N.Y. Educ. Law § 4404.2.  Specifically, New York law established within the state education department a "state review officer" ("SRO") who reviews and may modify any determination by an IHO regarding a disabled child's need for an appropriate special education program or service to be provided by a local school board or state agency responsible for a disabled child's special educational needs.  *Id.* Under New York law, the SRO is authorized to "require" a local school board which is the subject of a complaint, like that initiated by Plaintiff, filed pursuant to § 1415(b), *see* N.Y. Educ. Law § 4404.2 (governing complaint subject to an impartial hearing under § 1415(k)), to comply with the SRO's decision including any modifications of the IHO decision made by the SRO).  N.Y. Educ. Law § 4404.2.  Although New York law generally directs authority to the N.Y. Education Department to use "all means and measures to adequately meet the physical and educational needs of [disabled]

_____

[13]  Examples of New York State educational agencies responsible for a child's special educational needs are the New York Institute for the Education of the Blind, the New York State School for the Blind, the Lavelle School for the Blind, and the New York State School for the Deaf.  *See* N.Y. Education Law § 4301; § 4351 (respectively); *New York Inst. for the Education of the Blind v. United Federation of Teachers Committee for the N.Y. Inst. for the Education of the Blind*, 444 N.Y.S.2d 637, 641 (1st Dep't. 1981) (noting that New York state schools for the blind and deaf are "state-owned and operated" under "'the jurisdiction and control of the [N.Y.] Education Department,'" N.Y. Educ. § § 4301, 4351, and are subject to the visitation of the N.Y. Commissioner of Education pursuant to the New York Education Law § 4201).

children" [residing in the state] "as provided by law," N.Y. Educ. Law § 4403.1.
(bracketed material added), such broad legislative grant does not provide that State
Defendants, or any one of them, become responsible for assuring compliance with the
SRO's decision following an appeal pursuant to § 1415(g), by either displacing the local
education agency or school board, against which a complaint was lodged, in carrying
out the SRO's determination, or providing specific oversight to assure compliance with
the SRO's determination by the school board.

Thus, in light of the Act's structure and detailed provisions upon which Plaintiff's
claim for relief in this court seeking judicial review of SRO Kelly's decision pursuant to
§1415(i)(2)(A) is based, the court finds that Plaintiff has alleged in the administrative
complaint, filed pursuant to § 1415(b)(6) thereby initiating the administrative review by
the IHO and SRO in this case, that N.S.'s right to an FAPE and IEP as protected by the
Act was violated, not by the State Defendants, rather, Plaintiff complained that such
rights were violated by the School District.  Further, the complaint was subject to
independent review by an IHO and, in this case, according to Plaintiff, the IHO
essentially sustained the School District's position in opposing Plaintiff's complaint on
various grounds.  State Review Officer Decision at 3.  On Plaintiff's administrative
appeal of the IHO's determination, SRO Kelly modified the IHO's decision by finding
that the disputed modifications in N.S.'s IEP for the 2006-2007 school year were moot,
and remanded the matter to the IHO to take additional testimony on Plaintiff's
allegations that N.S's right to a pendency placement by the School District was not
sufficiently protected, and directed a further evaluation of N.S.'s disability as it affects

the IEP.[14]  *Id.* at 10.

Based on the Act's statutory scheme establishing that the rights to an FAPE and a proper IEP to effectuate an FAPE for a disabled child are to be implemented by a local educational agency, or by a state educational agency where a disabled child may be enrolled in a school program designed for certain disabled students which is directly operated by a state educational agency, *see, e.g.*, Discussion, *supra*, at 16 n. 13, any alleged failure by the local educational agency, the School District as relevant in this case, to provide such rights places the local educational agency under the obligation to provide an FAPE to the student or parents in an action for judicial review in either federal or state court brought by the parents of the student pursuant to the Act.  While an SRO is required to render a final administrative ruling on the matters raised by an administrative complaint as reviewed by the IHO as a prerequisite to an action for judicial review under the Act, §1415(i)(2)(A) (aggrieved party without right of appeal pursuant to 20 U.S.C. §1415(k) may initiate court action for review), the controversy over the propriety of the IEP and whether it deprives the student of an FAPE remains one between the student, or, as here, the student's parents, and the local educational agency because, under the Act, the primary responsibility for formulation and implementation of an FAPE and IEP is that of the relevant educational agency, in this case the School District, not State Defendants.  Nothing in the Act either directly or impliedly suggests that by their compliance with the Act's requirement to provide

---

[14]    The record does not indicate any action taken upon the SRO's remand order and Defendants, thus far, do not assert Plaintiff's action is subject to dismissal for failure to exhaust administrative remedies or a lack of ripeness.

impartial review of an administrative complaint attacking an IEP, State Defendants thereby become parties to the underlying dispute. Nor does the relevant state law place such responsibility upon any of the State Defendants. *See* N.Y. Educ. Law § 4403.1. (*passim*). Thus, in an IDEA action a district court rejected findings of the SRO who approved an IEP challenged by parents of a disabled student, the district court remanded the case, not to defendant state commissioner, who, under existing New York law, had acted as the SRO in the case, and against whom the court refused to dismiss the action, but to the defendant school district with directions to modify the IEP at issue to consider "mainstreaming" for the student. *See Mavis v. Sobol*, 839 F.Supp. 968, 992 (N.D.N.Y. 1994); *see also T.M. by J.M.*, 2009 WL 3191442, at *2 (finding upon record, including the SRO's decision, that defendant school board had "satisfactorily complied" with the N.Y. state education law regarding the student's need for special educational services under an IEP, including a behavior control plan formulated by the school board defendant).

Moreover, this court has previously concluded Defendant N.Y. State Department of Education may not be sued as a defendant to an IDEA action brought pursuant to § 1415(i)(2)(A). *See Kramer v. Springville-Griffith Inst. Cent. Sch. Dist. Bd. of Ed.*, 02-CV-765S, Slip Op. at 21-23, (W.D.N.Y. July 31, 2003) (N.Y. state education department not proper party defendant to parent's action under Act based on department's alleged failure to "ensure" that local school board provided plaintiff-student with FAPE) (attached as an exhibit to State Defendants' Reply (Doc. No. 38) (citing cases). Other district courts within New York state, cited by *Kramer*, have reached similar conclusions in IDEA actions filed against the New York State Education Department, the New York

Commissioner of Education, as well as the SRO: *Adrian R. v. N.Y. City Bd. of Educ.,* 2001 WL 1175103, at *1 (S.D.N.Y. Oct. 2, 2001) (noting that as "responsibility for developing and implementing a plan to provide individualized educational services [for handicapped students] is placed upon local school districts and not the state," and as court can order local school district to provide student with such services thereby providing plaintiffs "complete relief," state education department and commissioner of education are not necessary parties) (bracketed material added); *Mr. and Mrs. "B," individually and on behalf of "C.B." v. Bd. of Educ. of the Syosett Sch. Dist.*, 1998 WL 273025, at *4 (E.D.N.Y. Jan. 15, 1998) (dismissing IDEA action against New York education department because "broad and conclusory" allegation that state defendant failed to meet statutory responsibilities to supervise defendant school district with respect to providing special education to disabled child did not state claim for IDEA relief against state education department defendant); *Yamen v. Bd. of Educ. of the Arlington Cent. Sch. Dist*, 909 F.Supp. 207, 210-11 (S.D.N.Y. 1996) (based on lack of state education commissioner's alleged involvement in administrative review process established under the Act and state law, and absent allegations of actions or practices by commissioner that gave rise to "procedural deficiencies" in formulating or implementing an IEP at the school district level, or before the IHO or SRO, plaintiff's actions under 20 U.S.C. § 1415 against state education commissioner and state education department was dismissed); *Bruschini v. Bd. of Educ. of Arlington Cent. Sch. Dist.*, 1995 WL 807107, at *2 (S.D.N.Y. May 16, 1995) (where in plaintiff's IDEA action, if successful, plaintiffs could "obtain complete relief from local board of education," fact, as plaintiffs asserted, that list of independent hearing officers (IHO's) is maintained by

state and that state education department is "entrusted with management and control of education of disabled students in New York State" insufficient to require state education officials be defendants in case absent allegation of "gross violation of due process" by SRO (internal quotation marks omitted)); *Dorian G. v. Sobol*, 1994 WL 876707, at *3 (E.D.N.Y. Jan. 28. 1994) (N.Y. state commissioner of education not liable to plaintiff, mother of disabled child, in plaintiff's action in the nature of an "administrative appeal" under the IDEA and distinguishing *José P. v. Ambach*, 669 F.2d 865 (2d Cir. 1982) in which class action established N.Y. commissioner of education's liability for failure to "supervise" local school board by "insuring" such boards had "adopted procedures that complied with Act."). *See also M.K. by Ms. K. v. Sergi*, 2007 WL 988621, **4-5 (D.Conn. Mar. 30, 2007) (neither Connecticut commissioner of education nor state department of education are proper defendants to parent's IDEA action to review decisions of special education hearing officers except where plaintiff alleges "systemic" failures in state's system for due process reviews under IDEA (citing *Fetto v. Sergi*, 181 F.Supp.2d 53, 71 (D.Conn. 2001))).

Additionally, although the instant issue was not before the court in assessing the capacity of a *pro se* parent to institute an action seeking an FAPE under IDEA, in *Winkelman*, the Court stated that to bar parents from bringing their own action to enforce their right to an FAPE for their disabled child would be inconsistent with the IDEA's burden that the parents prove the IEP's inadequacy as a prerequisite for "obtaining a judgment mandating that the [child's] school district provide their child with an education program demonstrated to be an appropriate one." *Winkelman*, 550 U.S. at 532 (bracketed material and underlining added). That the Court did not perceive the

relief sought to be properly available in an IDEA action by the disabled child's parent, to be available against state educational agencies involved in the review process based upon the Act's impartial review scheme, is instructive. *See also Sch. Comm. of the Town of Burlington, Mass. v. Dep't. of Educ. of the Commonwealth of Mass.*, 471 U.S. 359, 370 (1985) (holding that court may order reimbursement of private school expenses incurred by parents of handicapped child in successful challenge to IEP brought under EHA, predecessor to IDEA, stating that it is "beyond cavil that 'appropriate' relief would include a prospective injunction directing the <u>school</u> <u>official</u> to develop and implement at public expense an IEP placing the child in a private school and affirming reimbursement award against petitioner <u>local</u> <u>school</u> <u>district</u>") (underlining added).

Nor does the fact that the New York Commissioner of Education exercises general supervising authority over the administration of public education within New York state, as Plaintiff argues, Plaintiff's Response at 4, 11, including the State's general obligation for compliance with the Act, alter the court's finding that neither the commissioner nor the State Education Department, which the Commissioner heads, are proper parties to an action pursuant to § 1415(i)(2)(A) to review a decision by a local school board regarding a disabled student's IEP. *See Bruschini*, 1995 WL 807107, at *2 (general supervision of public education in state by New York Commissioner of Education insufficient basis to render Commissioner defendant to IDEA action challenging an IEP). Despite the existence of such general supervisory authority, courts recognize the preeminence of local school boards under New York's scheme for the provision of public education in the state. *See Gulino v. New York State*

*Educ. Dep't.*, 460 F.3d 361, 365 (2d Cir. 2006) (holding state education department not a party to Title VII action against New York City school board based on specific supervisory powers by state education department absent direct control over day-to-day operations of school board and citing *Paynter v. New York,* 797 N.E.2d 1225, 1229 (N.Y. 2003) (quoting *Levittown Union Free Sch. Dist. v. Nyquist*, 439 N.E.2d 359, 367 (N.Y. 1982)).

Under New York law local school boards are granted general authority "[t]o have in all respect, the superintendence, management and control of the educational affairs of the district." *Gulino*, 460 F.3d at 365 (quoting N.Y. Educ. Law § 1604.30 (underlining added)). "'Although the New York Department of Education has substantial responsibility for education in the state, the local school districts maintain significant control over the administration of local school district affairs.'" *Gulino*, 460 F.3d at 366 (quoting *Kramer v. Union Free Sch. Dist. No. 15*, 395 U.S. 621, 623 (1969)). This plenary supervisory oversight by the New York State Education Department includes assuring compliance by the state with the state's obligations as a precondition to receiving funds under the Act. *See Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.,* 288 F.3d 478, 481 (2d Cir. 2002) (recognizing that under the Act states are granted federal funds to "provide disabled children with 'a free appropriate public' education in the least restrictive environment.") (internal citations omitted). Thus, the fact that the New York commissioner of education enjoys general supervisory authority over public education in New York, including an obligation to assure the State's obligation to comply fully with the Act as a prerequisite to receipt of continued federal funds under the Act, N.Y. Educ. Law § 4403, is an insufficient basis upon which to

impose legal responsibility upon Defendant Commissioner of Education or Defendant State Education Department, for providing any relief favorable to Plaintiff that may be ordered by this court pursuant to § 1415(i)(2)(A) based on a determination that the School District violated Plaintiff's right to a properly formulated and implemented IEP for N.S. as protected by the Act.  *See also Kramer,* 02-CV-765S, at 22 (IDEA action asserting that New York State Education Department is proper party rejected based on alleged "general supervisory authority" over plaintiff's local school board) (citing *Mr. and Mrs. "B,"* 1998 WL 273025, at *4 (dismissing IDEA action against New York State Education Department because "broad and conclusory allegations" that state defendant failed to meet its statutory responsibilities did not state a claim under IDEA); *Yamen,* 909 F.Supp. at 210-11 (dismissing IDEA, Rehabilitation Act, Section 504, and constitutional claims against New York State Education Department because plaintiff "merely alleged in conclusory and general fashion that the state defendants have violated their constitutional and statutory rights")).  Nor can such potential liability be established in the absence of any specific allegation that the Commissioner or the State Education Department interfered with the formulation or implementation of N.S.'s IEP. *Id.*

New York state courts, in considering IDEA claims, have reached similar results. *See, e.g.*, *Sackets Harbor Cent. Sch. Dist. v. Munoz*, 725 N.Y.S.2d 119, 123 (3d Dep't. 2001) (petitioner school board's contention that SRO is a "proper and necessary party" to special proceeding challenging SRO's determination that school board special education committee vote in adopting IEP for plaintiff was invalid held "without merit"); *Bd. of Educ. of the City of Buffalo Sch. Dist. v. Munoz*, Order & Judgment, Index No.

2003-6555 (N.Y. Sup. Ct. Erie Co. Dec. 19, 2003)[15] (dismissing SRO and N.Y. education commissioner Richard Mills as defendants to petitioner school board's special proceeding against parents of disabled child, SRO and education commissioner challenging SRO's determination that petitioner was obliged to provide special education related services as part of student's required interim alternative education setting), *aff'd*, 792 N.Y.S.2d 275, 275 (App. Div. 4th Dep't. 2005) (mem.).

Plaintiff further contends that State Defendants are proper parties in this action based on Defendant Mills's promulgation of regulations under which local school boards, like the School District, are required to provide special education for handicapped students and procedural safeguards to such students and their parents in compliance with the IDEA, and that SRO Kelly acts as the SRO under such regulations as required by the IDEA and New York law.  Plaintiff's Response at 3-18.  Plaintiff also relies on *Antkowiak v. Ambach*, 830 F.2d 444 (2d Cir. 1987); *Mr. X. v. New York State Educ. Dep't*, 975 F.Supp. 546, 553-54 (S.D.N.Y. 1997); *Mavis v. Sobol*, 839 F.Supp. 968, 978 (N.D.N.Y. 1994), and *Robert D. v. Sobel*, 688 F.Supp. 861, 866-67 (S.D.N.Y. 1988) for Plaintiff's contention that because the SRO performs the impartial review function required by the Act under the auspices of the New York State Education Department, the Department, and Commissioner of Education as its head, become defendants in any subsequent judicial review action. Plaintiffs' Supplemental Response at 4-6.  The court finds that Plaintiff's contentions are, however, without merit and that Plaintiff's reliance on the cited caselaw is misplaced.

---

[15] Unpublished order attached as exhibit to State Defendants' Reply (Doc. No. 34).

First, while the New York Education Department and its Commissioners are, by New York law, the agencies primarily responsible for assuring the state's compliance with the Act in order to assure continued federal funding for special education services under the Act, N.Y. Educ. Law §4403, the general responsibility to assure such compliance does not imply that this state educational agency and its top official thereby become parties to actions brought pursuant to the IDEA to review determination by an SRO involving challenges to a disabled student's IEP. As explained, Discussion, *supra*, at 14-15, a complaint filed against a local education agency, which initiates the review process established by the Act for challenges to an IEP, creates an adversarial relationship between the parents of the disabled child and the local school board's CSE which formulated the IEP, not between the parents and the state education agency which has provided the mechanism for impartial administrative review in compliance with the Act. Both the Act and New York law recognize that except in cases where the state directly operates a special education facility, Discussion, *supra*, at 16, n. 13, the primary responsibility for compliance with the Act in the case of individual students is placed upon the local school district. § 1413(a) (local educational agency eligible for special education funding under Act upon submitting plan for assurances that funding meets Act's requirements); § 1414 (setting forth various obligations for evaluations of children in need of special education services upon local educational agencies). *See also* N.Y. Educ. Law § 4402.1. . . . assigning responsibility to local school districts for evaluation of disabled children residing in district and providing special education services required by the Act). The logic of Plaintiff's theory would, if followed, displace the carefully defined role of the local school district under the Act in providing an FAPE

as established by the Act.  *See* § 1415(a) ("any . . . local education agency that received assistance under [this Act] . . . shall establish and maintain procedures in accordance with this section to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of a free appropriate public education by such agenc[y].") (bracketed material added).  Thus, that Defendants New York State Education Department and Commissioner of Education have authority to assure compliance with the Act by local school districts does not render them defendants in an action to review a determination of an SRO in a challenge to a particular child's IEP.[16]  Nor do the cases relied on by Plaintiff support Plaintiff's contention.

Specifically, in *Antkowiak, supra*, the court reversed an award of tuition reimbursement for parents based on the refusal of defendant New York Commissioner of Education to approve such reimbursement finding that as the facility for which plaintiffs sought reimbursement of tuition paid by plaintiffs on behalf of their disabled child was not approved by the Commissioner, the district court lacked authority under the IDEA to order such reimbursement.  *Antkowiak*, 838 F.2d at 640-41.  Thus, the merits of the child's IEP, administratively reviewed by the Commissioner acting as the SRO, were not at issue in the case and, as such, it is inapposite.

In *Mavis*, *supra*, plaintiffs, parents of a mentally disabled student, sued the New York State education commissioner and a local school board under the IDEA

---

[16]  The fact that a state educational agency is authorized to use federal funds otherwise available to a local educational agency to carry out the purposes of the Act where a local educational agency is ineligible, unable, or unwilling to do so, § 1413(g), or where disabled students would be better served by a regional system to deliver special education services, does not change this analysis as these exceptions are not alleged by Plaintiff to apply to the School District.

contending that the commissioner erred in upholding the school board's decision not to include the child in a regular first grade classroom setting and thereby failed to provide the student with an FAPE.  *Mavis*, 839 F.Supp. at 973.  Finding that because plaintiffs challenged the decision of the commissioner, then acting as the SRO, upholding the recommendation of an IEP for plaintiffs' child by the CSE of the child's school, plaintiffs were "aggrieved" by the Commissioner's determination, as that term was used in §1415(e)(2),[17] the court denied the Commissioner's motion to dismiss the Commissioner as a defendant in the action.  *Id.* at 969 n. 3, 978.  On the merits, the court found the disabled child should be educated in a way "consistent with the IDEA's mainstreaming requirement," and "remanded" the matter to the defendant school board for development of an IEP for the child in accordance with the court's ruling.  *Id.* at 992.

Relying in part on *Mavis*, the court in *Mr. X.,* in rejecting the defendant New York State Education Department's motion to dismiss it as a defendant, held that the department was a proper defendant in a special education case brought on behalf of a disabled child against the department and the child's local school district challenging an IEP that required the child be educated in the program tailored to the needs of children with similar disabilities.  *Mr. X.*, 975 F.Supp. 546, 550-51 (S.D.N.Y. 1997).  Specifically, the court found that the SRO's decision in that case, agreeing with the defendant school district's IEP for the child, was the legal equivalent of a decision by the New York State Department of Education which the court in *Mavis* had found to be a proper defendant in an IDEA case brought to challenge a disabled child's IEP that had been

---

[17]  Subsequently renumbered § 1415(i) by 2004 amendments to the IDEA.  Pub. L. 108-446, Title I, § 101, Title III, § 302(a).

upheld on administrative appeal by the New York Commissioner of Education acting as the SRO in that case. *Mr. X.*, 975 F.Supp. at 553. In reaching this conclusion, the court found that under the IDEA the New York State Department of Education was "subject to liability for the SRO's decision," *id.*, pointing to 34 C.F.R. § 300.510 n. 1, a note to regulation promulgated by the U.S. Department of Education ("Department"), under then §1415(c) ("§1415(c)"), which note stated "the SEA [state education agency] may conduct its review either directly or through another state agency acting on its behalf. However, the SEA remains responsible for the final decision on review." *Id.* at 554 ("Note 1") (bracketed material added).

In 1999, following the decision in *Mr. X., supra*, the Department revised 34 C.F.R. 300.510 to delete the text of Note 1. 64 C.F.R. 12406-01, 1999 WL 128278 (F.R.) at 423. In the official comment to the revision, the Department reiterated the text of Note 1 as reflecting the Department's policy, but that "in light of the general decision to remove all notes from these final regulations, Note [ ] 1 . . . would be removed." *Id.* Nothing in the text of the Department's comment suggests the phrase "the SEA remains responsible for the final decision on review" in Note 1 that the regulation or the policy as stated in Note 1 intended to impose responsibility upon an SEA for the formulation or implementation of the underlying IHO decision, as affirmed or modified on appeal by an SRO, regarding the IEP at issue. Given that the regulation, 34 C.F.R. §300.510, relates to §1415(g)'s impartial review requirement, the asserted SEA responsibility as stated in Note 1 more likely refers to the SEA's continuing responsibility to assure that the required impartial review function is provided by the state as required by the Act regardless of whether the impartial review function is

assigned to a state agency other than the SEA or as a necessary component of the state's general obligation to assure compliance with the requirements of the Act as a precondition to continued receipt of federal funds under the Act. Absent express language in the Act to the contrary and given the ambiguous phrasing of Note 1 (since deleted from the published form of the regulation, 29 C.F.R. § 300.510) as stating the Department's policy view on the requirements of present §1415(g), the court declines to ascribe an intention to impose such a supervening obligation on the state education officials in cases where the impartial review by an SRO involves an IEP prepared by a local educational agency; in this case the School District. *Compare* 46 F.R. 5463 (Jan. 19, 1981) explaining that, under the Department's regulations implementing the IDEA, the SEA remains responsible for "ensuring development of IEPs to handicapped children served by a public agency <u>other</u> than <u>an</u> <u>LEA</u>," *i.e.*, a local school board. *Id.* (underlining added). Thus, the more plausible scope of Note 1 pertains to appeals from an IEP by a public agency specifically responsible for providing an FAPE other than, as in the present case, a local school district. As such, this court finds the Department policy as expressed in former Note 1 to be inapplicable to the instant matter.[18]

The Act's careful assignment of responsibility for the development, implementation and review of an IEP between a local, or a state educational agency having such, according to the language of the Act, discrete responsibilities support this conclusion. *See* §1415(a), (b) (evaluation of child with disability as prerequisite to

---

[18] The court's research has failed to locate the original publication in the Federal Register of the relevant proposed regulation when initially promulgated containing the original text of Note 1 with the expected commentary.

providing special education services by local educational agency, or state education agency; §1414(d) (IEP to be developed in accordance with §1414); §1415(g) (state educational agency to provide for an impartial review of local school board's IEP). Nothing in the legislative history of § 1415(g), H.R. Rep. No. 94-664 (1975) at 48-49, cited by the Department as a source of authority for Note 1, 1999 WL 128278 (F.R.) at 423, indicates Congressional intent to impose such a far-reaching interpretation of §1415(g), as enunciated in *Mr. X.*, one, in this court's view, manifestly unmoored from any text in the Act or its legislative history. Nor does the court's decision in *Mr. X.* explain why such asserted responsibility by the state educational agency, as stated in former Note 1, for assuring implementation of the decision by the SEA should be necessary if the SRO decision is adverse to a parent, *i.e.*, in favor of a local school board. Accordingly, because *Mr. X.* relied on Note 1 in finding the New York State Education Commissioner should remain a defendant in that IDEA case, the court declines to following the holding in *Mr. X.*

Finally, Plaintiff's reliance on *Robert D. v. Sobel*, 688 F.Supp. 861 (S.D.N.Y. 1988) is misplaced as the issues raised in the State Defendants' motion were not presented to the court in *Robert D*. Rather, in *Robert D.*, the court held that the New York State Commissioner of Education and a local school board could be sued by parents of a disabled child for attorneys fees incurred as a result of the parents' successful administrative appeal of a local school board's decision regarding placement of a disabled child in an out-of-state school and the state education department's initial refusal to approve the placement. *Robert D.,* 688 F.Supp. at 863-64, 867. Significantly, in *Robert D.* the court relied on provisions in the Act authorizing the award

of attorneys fees to a prevailing parent in either an administrative or judicial proceeding regarding the placement question pursuant to the Act. *Id.* at 864-66. In awarding the fees, the court held that such fees could not be awarded against the New York Commissioner of Education based on his responsibility to accord an impartial review, but could be awarded based on the Commissioner's failure to timely approve an out-of-state educational program for the disabled child in contravention of the Act's requirements. *Id.* at 866 (distinguishing *Burr v. Ambach*, 685 F.Supp. 46, 49 (S.D.N.Y. 1988) (rejecting attorneys fees award against N.Y. Commissioner of Education based on commissioner's performance of a quasi-judicial function as state administrative review officer), *appeal dismissed on other grounds*, *Burr v. Ambach*, 863 F.2d 1071, 1074-75 (2d Cir. 1988) (certification for intermediate appeal of attorneys fees issue improvidently granted)). As the court in *Robert D.* noted "the holding in *Burr* [rejecting award of attorneys fees against N.Y. Commissioner of Education based on commissioner's function as SRO] is based upon sound proposition that the commissioner in performing his quasi-judicial function as an administrative review officer cannot be held liable for fees." *Robert D.*, 688 F.Supp. at 866 (bracketed material added). As such, *Robert D.* is irrelevant to the question whether state education department officials are proper defendants to a parent's judicial challenge, as here, to an IEP developed by a local school board and an adverse SRO decision. In any event, by comparison to the instant action, the case supports a finding that absent specific statutory language in the Act, the New York State Commissioner of Education does not become a party defendant in an action for judicial review pursuant to §1415(i)(2)(A) based on the impartial review actions of the SRO. *See Robert D.*, 688

F.Supp. at 866 (New York Commissioner of Education not liable for IDEA attorneys fees award based on action taken as state review officer).

In responding to Plaintiff's reliance on *Mr. X.*, *supra*, State Defendants argued that only the district court's decision in *Bd. of Educ. of the Pawling Cent. Sch. Dist. v. Schutz*, 137 F.Supp.2d 83 (N.D.N.Y. 2001), *aff'd on other grounds*, 290 F.3d 476 (2d Cir. 2002), where a local school board brought an action to contest an SRO's order directing tuition reimbursement by the plaintiff board to defendant parents, had, relying on *Mr. X.* and *Mavis, supra,* held New York State Education Department officials were proper, including the New York Commissioner of Education and the SRO, to an action brought pursuant to the IDEA to review the SRO's determination. Specifically, in *Schutz*, plaintiff school board argued that the SRO had improperly applied §1415(j), the "pendent placement" rule, which requires a student be retained in the student's current educational program pending any legal proceedings brought pursuant to §1415, in violation of §1412(c)(1) which disallows claims for private school tuition reimbursement from a school board if the board has provided an FAPE for the student. *Schutz*, 137 F.Supp.2d at 88. In *Schutz,* the state defendants sought dismissal arguing that they were not proper parties to the action. *Id.*[19] Relying on *Mavis, supra*, and *Mr. X., supra*, which held, respectively, that the New York State Education Commissioner (*Mavis*) and the SRO (*Mr. X.*), as an official appointed by the commissioner, are required to "defend his [the commissioner's] review decision," on a challenged IEP, *Schutz*, 137 F.Supp.2d at 89, the court denied the state defendants' motion to dismiss.

---

[19] This issue was not discussed by the Second Circuit decision affirming dismissal of the action. *Schutz*, 290 F.3d 476 (*passim*).

However, merely because the State Defendants have, in accordance with the Act, §1415(g), in compliance with New York law, N.Y. Educ. Law § 4404.2., provided the requisite impartial and final administrative review of a decision of an IHO's decision by the SRO, it does not follow that state officials like State Defendants thereby become defendants in subsequent actions for judicial review authorized by the Act seeking judicial review the SRO decision.  The fact that a party, particularly, as in this case, the parent of a disabled child, to a "complaint" initiated pursuant to §1415(b)(6)(A) requesting review of an IEP established by a local school board in accordance with §1415(f) and §1414(a) - (e), may, as a result of a later adverse ruling by the SRO, conducted under § 1415(g)(2), the prerequisite to seeking judicial review, be "aggrieved," *i.e.*, dissatisfied, by such decision and thus permitted to commence suit pursuant to §1415(i)(A)(2), does not alter that the matter involving a challenged IEP before the IHO, the SRO, and, ultimately, if the aggrieved party, here Plaintiff, elects to sue, the court, is a dispute arising under the terms of the Act between the parents or guardian of a disabled student and the local educational agency, here the School District, responsible under the Act, and applicable state law, for the formulation and implementation of an IEP, "reasonably calculated" to provide access to an FAPE, *Rowley,* 450 U.S. at 207, for N.S., the disabled student in this case.  Regardless of an SRO's determination, either upholding the position of the parent-complainant or of the school board, the disputants in relation to the "complaint," required by §1415(b)(6), (7), which initiated the dispute, remain the same.  Thus, if the aggrieved parents do not prevail before the SRO, the judicial proceeding, like the parents' initial administrative complaint before an IHO, is still one against the local school board, not the SRO, albeit

now with the support of the SRO's favorable determination.  As such, the parents, as complainants seeking judicial review and relief, are the plaintiffs in the ensuing IDEA action, and the local school district is the defendant, *i.e.*, the party against which plaintiffs seek relief under the Act based on its violations of the right extended to plaintiffs by the term of the Act.  *See* §1415(c)(2)B) (requiring local school board to respond to the complaint); N.Y. Educ. Law §4404.2 (SRO may modify IHO's IEP for a child and order relevant "board" [of education] to comply with such modified IEP).  As it is the local education agency, not the SRO or State Education Department that is responsible for N.S.'s IEP, it is therefore the School District that is the proper defendant in this action.

Adding State Defendants as defendants not only is without support in the "text and structure" of the Act, *Winkelman*, 550 U.S. at 531, but disrupts the state's scheme of imposing primary responsibility for the delivery of special education services upon local school districts, *Gulino*, 460 F.2d at 366; *see also Polera,* 288 F.3d at 483-86 (holding that because the IDEA contemplates a remedy that "seek[s] changes to a student's [special education] program" compensatory damages therefore are not available) (bracketed material added); *Adrian*, 2001 WL 1175103, at *1 ("[t]he responsibility for developing and implementing a plan to provide individualized educational services is placed upon the local school districts, not the State."), beyond any specific mandate stated in the Act.  Accordingly, the court respectfully declines to follow the contrary holding on this issue as stated in *Schutz*.

Just as by the terms of the Act neither the IHO nor the SRO are constituted as parties to the administrative complaint, these officers, functioning as required under

state law to satisfy the state's obligations under the Act to provide impartial review of the local school district's decision-making regarding a student's IEP, are not as a result of fulfilling their mandated review functions transformed into disputants directly involved in the underlying disagreement over the substance of the IEP between the parents of a child and the local school district. *See Robert D.*, 688 F. Supp. at 866 (review function by New York State Commissioner of Education does not render Commissioner defendant in an IDEA action based on such review). Rather, these officials remain the neutral functionaries, presumably knowledgeable, if not expert, *Rowley*, at 202, in special education matters as they are expected to be in providing the required impartial review to assure that the parent's and student's rights to an IEP and FAPE under the Act are realized. Even where an SRO's final decision may be at odds with the respective positions of the parents and school district as to the specifics of a student's IEP, the result is the same: the parents seek adoption of their formulation or requested modification of an IEP for the child as allowed under the Act, tuition reimbursement, or other financial relief available under the Act, by the local education agency or school district (or, in New York state, in a case of a specialized state operated school, the school or, as its controlling agency, state education department),[20] which seeks to maintain its formulation or modification of an IEP or other disposition of a parental request, for example, with respect to a requested tuition reimbursement, or other substantive issues, such as, a "pendent placement," as required by §1415(j) demand as Plaintiff seeks in the instant case, or other related procedural issues.

---

[20] Decision, *supra*, at 11 n. 10 (providing examples and authorities).

Regardless of the possibility that in a given case the SRO decision may even be unacceptable to both sides, in seeking judicial review under the Act, the parents and school district remain in disagreement and adversaries with respect to the IEP in dispute to be finally adopted for the child by the court, if necessary, or as to related issues such as alternative placement pursuant to §1415(k). The court's plenary review pursuant to §1415(i) will result in a determination that will be imposed in the form of either equitable or limited financial relief, or both, not upon the SRO (or, for that matter, the New York State Commissioner of Education), but upon the local education agency or, in this case, the School District, which under the Act and applicable New York law has primary responsibility to provide the required FAPE and IEP. *See, e.g., Mavis*, 839 F.Supp. at 992 (remanding case to local school board for implementation of court's modified IEP despite court's refusal to dismiss state education officials as defendants). Therefore, as neither the terms or structure of the Act or any applicable regulations, nor controlling caselaw, establish that a defendant SRO or related state education agencies or officers, here State Defendants, are obligated to Plaintiff for rendering an improper IEP by the School District, Plaintiff has not alleged a claim for relief upon the assumed facts stated in the Complaint available under the Act against State Defendants, and their dismissal is required under Fed.R.Civ.P. 12(b)(6).

Absent an allegation by Plaintiff that the New York State Commissioner of Education failed to timely provide a disabled student with an FAPE in a specialized state-operated special education facility over which Commissioner had "extensive responsibilities," *Burr v. Ambach*, 863 F.2d 1071, 1077 (2d Cir. 1988) (commissioner's refusal to grant free compensatory education at state institute for education of blind

students resulting from commissioner's delay in processing student's administrative appeal rendered commissioner liable for costs of compensatory education and related attorneys fees required as a result of delay), an allegation that the New York State Commissioner of education has specifically violated Plaintiff's rights as protected under the Act by, for example, permitting so-called "systemic violations" resulting in a deprivation of N.S.'s rights to an FAPE, *e.g.*, *Yamen*, 909 F.Supp. at 210-11 (absent allegations of "systemic violations of federal and state law," New York State Commissioner of Education, and State Department of Education not proper parties to parents' action seeking tuition reimbursement for placement of disabled child in private school), or an allegation that the State Defendants are guilty of "gross violation[s]" of Plaintiffs' due process rights under the Act, *Bruschini*, 1995 WL 807107, at *2, neither the New York State Education Commissioner, the New York State Education Department, the University of the State of New York, nor the SRO, may be sued as defendants in an action, such as the instant action, brought by Plaintiff pursuant to §1415(i) challenging, as the parent of N.S., a disabled child, N.S.'s IEP and seeking to vindicate N.S.'s right to an FAPE as protected under the Act.[21, 22]

---

[21] The court is well-aware there are substantial added costs associated with providing special education incurred by school districts and that where an IEP is disputed additional resources may be necessary to facilitate enable the school district's compliance with a court's resolution of the dispute, thus providing a rationale to add state educational officials as defendants to an IDEA action based on the supposition that such additional funds may be provided by the state. However, those policy considerations are for Congress or the New York legislature, not the courts, to evaluate.

[22] Plaintiff's allegations against State Defendants of "due process" violations regarding the conduct of the CSE's determination of N.S.'s IEP and subsequent review by the SRO are highly generalized in the Complaint, Complaint at 8 (SRO decision "violates . . . due process rights of parents [*sic*]") and Plaintiff's assertion of bias against the SRO is not pleaded; rather it is stated and supported by Plaintiff's incorporation of the Marcus Report in Plaintiff's Response Exh. B. The court is therefore unable to consider for purposes of Fed.R.Civ.P. 12(b)(6) these asserted facts as alleging "systemic," *Yamen*, 909 F.Supp. at 40-41, or "gross" violations of Plaintiff's due process rights, *Bruschini*, 1995 WL 807107, at *2,

This conclusion is consistent with the Supreme Court's holding in *Rowley*, 450 U.S. at 202, that the underlying administrative review proceedings in a challenge to a child's IEP are entitled to "due weight," and court holdings that an SRO's determination should be given such deference because the courts lack "specialized knowledge and experience" in special education matters. *T.M. by J.M.*, 2009 WL 3191442, *2 (citing *Collins v. Bd. of Educ.,* 164 Fed. Appx. at 21, and *Walczak,* 143 F.3d at 129). It would be anomalous if a state official, particularly an SRO, who is required by law to render impartial decisions on an administrative appeal of an IEP, would thereby become an adversary to an aggrieved parent of a disabled child and thus a defendant in a subsequent proceeding seeking judicial review of the SRO's decision, where the challenged decision is also entitled under *Rowley* to special "due weight," and deference by the court reviewing it because of the presumed superior expertise of a defendant, the SRO, who issued the subject decision, compared to that of the court. Such result would be particularly askew given that the Court's holding in *Rowley* requiring courts give an SRO decision "due weight" was predicated upon the assumption that the review function established by the Act, §1415(g), *i.e.*, the SRO, is to be impartial and knowledgeable. *See* §1415(f) (guaranteeing parents right to "impartial due process hearing"); §1415(g)(2) (requiring state provide "impartial review" of IHO decision); *Rowley*, 458 U.S. at 206, 208; *T.M. by J.M.*, 2009 WL 3191442, at *2 (citing cases). The court therefore finds that if by making an impartial and presumably

---

sufficient to state a claim against all State Defendants, subject to the District Judge's agreement that the SRO is entitled to judicial immunity. As discussed, *supra*, at 11 n 8, as no responsive pleading was filed by State Defendants, Plaintiff may file an amended complaint. Again, the court takes no position whether any such amended complaint would withstand a further motion to dismiss for failure to state a claim. *Id.*

expert decision an SRO (or New York Commissioner of Education), is thereby rendered an adversary, requiring representation in a judicial review action to defend the SRO's decision, opposed to the aggrieved party, such result stands in contradiction to *Rowley's* rationale for requiring the SRO's decision, as an important component of the underlying proceedings that must under §1415(e), be considered by the court, be given "due weight" and deference by reviewing courts.

Finally, as complete relief against the School District in available to Plaintiff if successful in this action and the court is required to consider the underlying administrative proceedings, §1415(e), including the SRO Kelly decision at issue, State Defendants are not necessary parties and should not be subject to joinder pursuant to Fed.R.Civ.P. 19(a) (party must be joined if court "cannot accord complete relief among existing parties"). *See Bruschini*, 1995 WL 807107, at *2 (IDEA action against state officials dismissed because plaintiff may "obtain complete relief from local board of education"). Thus, as compliance with an SRO's determination is the primary responsibility of a local school district under both the Act and related New York law, the equitable and financial relief, *Polera*, 288 F.3d at 486 (monetary damages not available in IDEA action), sought by Plaintiff and solely available to Plaintiff under §1415(i)(2)(C)(iii) cannot be imposed on State Defendants, and, accordingly, no claims for the relief available under the IDEA as requested by the Complaint can be alleged against them.

Plaintiff's alleged due process violations against SRO Kelly, Complaint at 8, regarding the SRO's unlawful direction of an evaluation of N.S., as well as several procedural failures committed by SRO Kelly in connection with the conduct of the

impartial appeal, Plaintiff's Response at 10, also should be dismissed against State Defendants. Plaintiff asserts that SRO Kelly's decision deprived Plaintiff's child, N.S., of an FAPE as a result of several violations of the procedural requirements established by Defendant Commissioner of Education for the conduct of hearings by an SRO on appeals from decisions of an IHO. Plaintiff's Response at 8-10. Plaintiff also accuses the SRO of bias against parents, like Plaintiff, who "strongly advocate" and actively litigate special education claims on behalf of their disabled children. *Id.* at 6, 12. However, a fair reading of the Complaint and Plaintiff's Response reveals that Plaintiff's "due process" allegations are based on assertions that the School District and the SRO, violated various procedural requirements under applicable New York State Education Department regulations governing the formulation of an IEP and appeals from the IEP adopted by the School District for a disabled student like N.S., not a violation of the Due Process Clause of the Fourteenth Amendment cognizable in an action brought pursuant to 42 U.S.C. §1983. As the Second Circuit has recognized that while IDEA plaintiffs may "merge" these two concepts, "[n]evertheless, a statutory violation does not necessarily offend the Constitution." *Burr*, 863 F.2d at 1075. Moreover, the court finds such allegations do not assert facts establishing a claim of "gross violation[s]" of the applicable rules pertaining to the conduct of SRO reviews. *Bruschini, supra*. Thus, Plaintiff's allegations of the SRO's violations of statutory and regulatory procedural requirements will be relevant to judicial consideration of the merits of Plaintiff's claim attacking the SRO's modification of the IHO decision and remand order in N.S's case, and may be considered by the court in reviewing Plaintiffs' basic claim that the School District's IEP for N.S. and the decisions of the IHO and SRO in modifying the IEP

violated Plaintiff's right to an FAPE for N.S. under the Act.  If Plaintiff intended to assert a constitutional due process claim pursuant to 42 U.S.C. §1983, the court finds that the Complaint fails to assert facts sufficient to establish a plausible claim of such violation by State Defendants.  *See Iqbal*, 129 S.Ct. at 1949.  However, as Plaintiff is proceeding *pro se*, and if the District Judge does not agree that the SRO is entitled to absolute immunity, Discussion, *supra*, at 9-11, then as no responsive pleading has yet been filed on behalf of State Defendants, Discussion, *supra*, at 11 n. 8, Plaintiff may file an amended complaint against the individual State Defendants alleging facts sufficient under *Iqbal* to state a §1983 claim based on violations of procedural due process under the Due Process Clause of the Fourteenth Amendment as Plaintiff may be able to allege.  As such, for the reasons discussed, Discussion, *supra*, at 41-42, the SRO is not a proper defendant in this IDEA action alleging such "due process" violations of state law, and Plaintiff's claims against SRO Kelly's motion on this ground should be GRANTED.

Plaintiff also asserts entitlement to relief and damages pursuant to the American with Disabilities Act ("ADA"), Complaint at 13.  Specifically, Plaintiff alleges that the School District's staff have retaliated against N.S. and Plaintiff based on Plaintiff's advocacy on behalf of N.S., Complaint at 12, and seeks damages against the School District on that basis.  No specific similar allegations under the ADA are directed in the Complaint against  State Defendants.  Accordingly, it is unnecessary to consider State Defendants' motion as to this claim.  Even if Plaintiff's ADA claim was asserted against State Defendants, absent evidence "'that the defendants acted with bad faith or gross misjudgment,'" claims for denial of special education services for handicapped students

43

do not arise under the ADA; rather, they arise, if at all, exclusively under the IDEA. *See M.K. ex. rel. Mrs. K. v. Sergi*, 554 F.Supp.2d 175, 195 (D.Conn. 2008) (quoting *Fetto v. Sergi*, 181 F.Supp.2d 53, 75-76 (D.Conn. 2001), and citing *R.B. ex. rel. L.B. v. Board of Educ. of City of New York*, 99 F.Supp.2d 4111, 4119 (S.D.N.Y. 2000)).

## CONCLUSION

Based on the foregoing, State Defendants' motion (Doc. No. 19) should be GRANTED.

Respectfully submitted,

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

Dated: February 9, 2010
Buffalo, New York

Pursuant to 28 U.S.C. §636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited*, 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


DATED:        February 9, 2010
              Buffalo, New York