UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

B.J.S., on behalf of N.S., a child with a disability,

                              Plaintiff,

        v.

The State Education Department/The University of
  the State of New York,
Paul R.  Kelly, State Review Officer,
Richard P.  Mills, Commissioner of Education, and
Springville-Griffith Institute Central School
 District Board of Education,

                            Defendants.
_____

**REPORT
and
RECOMMENDATION**

**08-CV-00513A(F)**

APPEARANCES:       FRANK T.  HOUSH, ESQ.
                        Attorney for Plaintiff
                        70 Niagara Street
                        Buffalo, New York 14202

                        Hodsgon Russ, LLP
                        Attorneys for Defendant School District
                        PAUL I.  PERLMAN, and
                        RYAN L.  EVERHART, of Counsel
                        The Guaranty Building
                        140 Pearl Street
                        Suite 100
                        Buffalo, New York 14202

## **JURISDICTION**

      This case was referred to the undersigned by Honorable Richard J. Arcara on

June 17, 2009.  The matter is presently before the court on Defendant School District's

motion for summary judgment (Doc. No. 69), filed May 27, 2011.

## BACKGROUND and FACTS[1]

Plaintiff B.J.S. ("Plainitff" or "B.J.S."), commenced this action on July 10, 2008, by filing a complaint alleging on behalf of herself and her child, N.S. ("N.S."), then enrolled in Defendant Springville-Griffith Institute Central School District ("the School District"), that Defendants New York State Department of Education ("NYSED"), NYSED Commissioner Richard P. Mills ("Commissioner Mills" or "Mills"), NYSED appointed State Review Officer ("SRO") Paul F. Kelly ("SRO Kelly" or "Kelly") (together, "State Defendants"), and the School District, denied N.S. a free and appropriate public education ("FAPE"), for the 2006-2007 school year for N.S.'s 7th grade, in violation of the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq*. ("the IDEA" or "the Act").

It was during the 2002-2003 school year that N.S. was first determined by the School District's Committee on Special Education ("CSE") to be autistic and, thus, a student in need of special education and related services.  As such, the CSE, as required by the IDEA, developed an individualized education program ("IEP") which, if correctly followed, would provide N.S. with the FAPE mandated by the IDEA.  During the 2002-2003 school year, the IEP pursuant to which N.S. was educated by the School District, allowed N.S. to make substantial progress in all academic and social areas.

Plaintiff filed a complaint with the School District[2] challenging the IEP for the 2005-2006 school year and requesting an administrative due process hearing before an

---

[1] The Facts are taken from the pleadings and motion papers filed in this action.

[2] The date Plaintiff filed the administrative complaint with the School District is not in the record.

Impartial Hearing Officer ("IHO").  The requested hearing commenced on April 4, 2006 and was pending at the start of the 2006-2007 school year at issue in this action.  The pending due process hearing against the School District prevented the School District from making any changes to N.S.'s IEP, such that no IEP for the 2006-2007 school year was in place until October 17, 2006, when the CSE conducted its annual review of N.S.'s IEP.  As such, N.S. began the 2006-2007 school year being educated pursuant to a "Pendency Plan," defined as the most recent agreed upon IEP, specifically, the IEP for the 2003-2004,[3] despite the fact that such IEP had earlier been found by both an IHO and SRO to be both procedurally and substantively inappropriate and, as a result, annulled in a separate proceeding held that school year.[4]  Complaint at 26.

On February 16, 2007, Plaintiff commenced an administrative proceeding challenging the 2006-2007 IEP adopted by the CSE on October 17, 2006, thereby necessitating an impartial due process hearing before an IHO.  Plaintiff's administrative complaint asserted, *inter alia*, the 2006-2007 IEP denied N.S. an FAPE and that the School District failed to implement N.S.'s pendency placement.  Because the administrative proceeding was *B.J.S. v. State Education Department/University of the State of New York*, not resolved prior to the end of the 2006-2007 school year, N.S. remained in his pendency placement for the school year, and the 2006-2007 IEP for N.S. was never implemented.

---

[3] The status of N.S. while educated pursuant to an unchanged IEP is referred to as "pendency placement."  20 U.S.C. § 1415(j); N.Y. Educ.  Law § 4404(4)(a) (McKinney's 2010).

[4] Although not directly raised in this action, Plaintiff's challenge to N.S.'s continued education pursuant to the Pendency Plan, *i.e.*, the 2003-2004 IEP, is before the court on Plaintiff's earlier action, *B.J.S. v. State Education Department/University of the State of New York*,  07-CV-00456A(F).

On March 28, 2007, the School District moved with regard to the administrative proceedings initiated by Plaintiff to dismiss the requested due process hearing regarding the 2006-2007 IEP on the basis that the 2006-2007 IEP had expired and was supplanted by a subsequent IEP.  Paul T. Bumbalo, the School District's appointed Impartial Hearing Officer ("IHO") ("IHO Bumbalo" or "Bumbalo"), a nonparty to this action, granted the School District's motion with regard to its procedural claims, but denied the motion as to the substantive claims, and the impartial due process hearing ("impartial hearing") was held only with regard to the substantive claims.

The impartial hearing was held over six days, commencing on June 29, 2007, continuing on July 12, August 10 and 16, and September 28, 2007, and concluding on October 12, 2007.  On December 10, 2007, IHO Bumbalo rendered a decision ("IHO Decision"), ruling Plaintiff had failed to demonstrate the 2006-2007 IEP was inappropriate, as was her burden, and determining the School District had reasonably implemented N.S.'s IEP for the 2006-2007 school year.  Nevertheless, Bumbalo further found the School District improperly failed to provide N.S. with vision therapy, and ordered the School District to reimburse Plaintiff for the costs of transporting N.S. to vision therapy services.  Additionally, Bumbalo ordered N.S. to undergo an autism evaluation to determine the extent of N.S.'s autism, and a functional behavioral assessment ("FBA"), and the cause of N.S.'s refusal to attend certain classes.

On January 14, 2008, Plaintiff appealed the IHO Decision to the NYSED.  The School District cross-appealed the IHO Decision insofar as it denied the School District's motion to dismiss Plaintiff's substantive complaints.  On March 10, 2008, SRO Kelly, after reviewing the administrative record and written memoranda of law, rendered

4

his decision ("SRO Decision") ruling IHO Bumbalo's denial of the School District's motion to dismiss Plaintiff's substantive complaints was erroneous.  In particular, SRO Kelly found that when an IEP expires with the end of the relevant school year, or is supplanted by a subsequent IEP, claims regarding the expired IEP are moot.  SRO Kelly also determined that Plaintiff was denied sufficient opportunity to prove her substantive claims when IHO Bumbalo failed to assist Plaintiff in securing the testimony of several witnesses.  Accordingly, SRO Kelly ordered the impartial hearing be reconvened to hear additional testimony regarding the implementation of N.S.'s pendency program during the 2006-2007 school year and render a new IHO decision, and also ordered the CSE to conduct a reevaluation of N.S.

On March 19, 2008, IHO Bumbalo contacted the parties to the impartial hearing by e-mail, inquiring as to their availability for a prehearing conference to schedule the remanded hearing.  The prehearing conference initially was scheduled for April 15, 2008, and then adjourned to May 15, 2008 at the request of the parties.  The May 15, 2008 conference, however, was never held because Plaintiff, by letter dated May 9, 2008 ("May 9, 2008 letter") to IHO Bumbalo, advised that because she believed it would be futile to call any witnesses, she would not participate in the remanded hearing.  The School District did not oppose Plaintiff's failure to participate in the remanded hearing. In his decision rendered on July 3, 2008 ("IHO Remand Decision"), IHO Bumbalo found Plaintiff's failure to participate in the remanded hearing rendered moot the issues for which the SRO had remanded the matter, and advised Plaintiff of her right to appeal the IHO Remand Decision to the State Review Office.

Rather than comply with the SRO Decision and consent to a reevaluation of

N.S., or appeal the IHO Remand Decision to the SRO, Plaintiff commenced this action,

seeking monetary damages under the IDEA for alleged due process violations by the

School District, retaliation by the SRO based on the SRO's alleged hostility against

parents, including Plaintiff, of disabled children who seek redress under the Act, and for

pain, suffering and emotional distress.  According to Plaintiff, the School District's

violations of the IDEA, including failure to provide N.S. with occupational and vision

therapy, counseling, and speech services, has deprived N.S. of an FAPE such that N.S.

does not meet state learning standards, and suffers anger and frustration and resists

the learning environment, causing N.S. emotional, social and academic harm.  Plaintiff

alleges the School District denied N.S. an FAPE and the IEP the School District's CSE

previously formulated for N.S. for the 2006-2007 school year was improperly modified.

Plaintiff further maintains the School District violated Plaintiff's right, as a parent of a

disabled child, to full participation in the CSE which formulated N.S.'s IEP.  Plaintiff

specifically seeks to have annulled the December 10, 2007 IHO Decision, and the

March 10, 2008 SRO Decision affirming the IHO Decision that relief requested by

Plaintiff regarding alleged procedural issues was moot given that the 2006-2007 school

year had ended without the 2006-2007 IEP ever having been instituted and remanding

the matter to the IHO for further hearing and reevaluation of N.S.

In a Report and Recommendation filed by the undersigned on February 9, 2010

(Doc. No. 40) ("R&R"), dismissal of all claims asserted against State Defendants was

recommended.  The R&R was adopted by Judge Arcara on March 23, 2010 (Doc. No.

46) (reported at *B.J.S. v. State Education Department/University of State of New York*,

("*B.J.S.*"), 699 F.Supp.2d 586 (W.D.N.Y. 2010)).  As such, this action continues against

only the School District ("Defendant").

On May 27, 2011, Defendant filed the instant motion for summary judgment (Doc. No. 69) ("Defendant's motion"), supported by the attached Declaration of Ryan L. Everhart, Esq., in Support of Defendant Springville-Griffith Institute Central School District Board of Education's Motion for Summary Judgment ("Everhart Declaration"), with attached exhibits A and B ("Defendant's Exh(s). __"), Defendant's Statement of Undisputed Facts Pursuant to Local Rule 56.1 ("Defendant's Statement of Undisputed Facts"), and a Memorandum of Law in Support of Defendant's Motion for Summary Judgment (Doc. No. 70) ("Defendant's Memorandum").

To date, despite several extensions of time, Doc. Nos. 75, and 76, Plaintiff has failed to respond in opposition to Defendant's motion, and her time to do so has expired.  Oral argument was deemed unnecessary.

Based on the following, the School District's motion for summary judgment should be GRANTED.  The Clerk of the Court should be directed to close the file.


## DISCUSSION

Defendant argues in support of summary judgment that, as a matter of law, (1) the court is without jurisdiction over this action because Plaintiff failed to exhaust administrative remedies prior to commencing the action, Defendant's Memorandum at 8-10; (2) the IDEA does not provide for the monetary damages Plaintiff seeks, *id.* at 10-11; and (3) the court should defer to the SRO's decision which was both reasonable and appropriate, *id.* at 11-18.  Summary judgment on a claim or defense will be granted when a moving party demonstrates that there are no genuine issues as to any material

fact and that a moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) and (b); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986); *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010).  The party moving for summary judgment bears the burden of establishing the nonexistence of any genuine issue of material fact and if there is any evidence in the record based upon any source from which a reasonable inference in the non-moving party's favor may be drawn, a moving party cannot obtain a summary judgment. *Celotex*, 477 U.S. at 322.

Once a party moving for summary judgment has made a properly supported showing as to the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor and "may not simply rely on conclusory statements or on contentions that the affidavits supporting the motion are not credible." *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995) (citing cases).  Rather, Fed. R. Civ. P. 56(e) requires that

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

"[F]actual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial."  *Hayes v. N.Y. City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir.1996).  Here, the record establishes Defendant School District is entitled to summary judgment.

1.      **Exhaustion of Administrative Remedies**

Defendant first argues that Plaintiff, by commencing the instant action before the

SRO Decision became final, failed to exhaust administrative remedies, thereby

depriving this court of jurisdiction over the matter.  Defendant's Memorandum at 8-10.

As relevant, the SRO ruled, *inter alia*, that the IHO, by failing to issue subpoenas for

witnesses on Plaintiff's behalf, improperly limited Plaintiff's ability to prove her claim that

the School District was not implementing N.S.'s pendency placement and remanded

the matter for additional testimony before the IHO to permit Plaintiff to prove her claims,

as well as for reevaluation of N.S.  *Id*. at 7-8.  Plaintiff, however, when contacted by the

IHO to schedule the remanded hearing, indicated she did not intend to participate in the

remand hearing, nor did Plaintiff ever concede to a reevaluation of N.S.  *Id*. at 16-18. As

such, the remand hearing was never held, and the SRO Decision never became final,

such that Plaintiff failed to exhaust administrative remedies prior to commencing this

action.  *Id*.  at 9-10.  Although Plaintiff alleges she has "exhausted the administrative

review process by requesting and completing an impartial due process hearing and by

the Office of State Review rendering a decision based on the appeal of the IHO

decision, filed by the Plaintiff," Complaint at 5, Plaintiff has not filed a response

opposing Defendant's motion, including Defendant's assertion that Plaintiff, by failing to

participate in the reconvened hearing upon remand, has prevented the SRO Decision

from becoming final, and therefore has failed to exhaust administrative remedies.

Despite Plaintiff's failure to respond in opposition to summary judgment, the

papers filed by Defendant in support of its motion reveal, undisputed by Plaintiff, that

Plaintiff decided against consenting to the remand hearing believing it would have been

futile and only delayed the instant action, possibly beyond the four months in which

Plaintiff was required to file this action.  *See* May 9, 2008 Letter from WNYFACES, Inc.[5]

to IHO Bumbalo ("May 9, 2008 letter")[6] at 2 (Plaintiff and Barr advising Bumbalo that

Plaintiff disagrees with the SRO Decision insofar as the SRO found insufficient due

process hearing testimony and evidence to determine whether N.S.'s pendency

placement provided an FAPE as required under the IDEA).  Plaintiff further asserted to

the IHO that remanding the matter to the IHO to reconvene the due process hearing to

permit Plaintiff to call witnesses from the School District to provide further testimony

would be futile and would only serve to deprive Plaintiff of the ability to timely file an

action in this court.  *Id*.  at 1-2

  "The IDEA's central mandate is to provide disabled students with a 'free

appropriate public education' in the least restrictive environment suitable for their

needs."  *Cave v. East Meadow Union Free School District*, 514 F.3d 240, 245 (2d Cir.

2008) (quoting *Heldman ex rel. v. Sobol*, 962 F.2d 148, 150 (2d Cir. 1992)).  The IDEA

provides parents of students with disabling conditions "'both an opportunity for

meaningful input into all decisions affecting their child's education and the right to seek

review of any decision they think inappropriate.'"  *Id*. (quoting *Honig v. Doe*, 484 U.S.

305, 311-12 (1988)).  "Parents are specifically entitled to request a due process hearing

in order to present complaints as 'to any matter relating to the identification, evaluation,

---

[5] "WNYFACES" is an acronym for "Western New York Family Advocacy for Children's
Educational Services," a non-profit corporation of which Plaintiff and one Sheila Barr ("Barr"), a non-party,
are co-executive directors, and engaged as advocates and consultants for families with children with
disabilities requiring special education services.

[6] Defendant's Exh. A.

or educational placement of the child, or the provision of a free appropriate public education.'" *Id*. (quoting 20 U.S.C. § 1415(b)(6)(A); and citing 20 U.S.C. §1415(f)(1)(A), (g), and (h) (delineating procedural safeguards to be accorded to parties filing a complaint and their right to seek review through local and state administrative avenues)).  As relevant to this case, New York provides, in accordance with the IDEA, a two-tier administrative review system for challenged IEPs.  *Cave*, 514 F.3d at 245. "First, an impartial hearing officer is selected from a list of certified officers and appointed by the local board of education . . . to conduct the initial hearing and issue a written decision."  *Id*.  "That decision can be appealed to a state review officer of the New York Education Department."  *Id*. (citing *Heldman*, 962 F.2d at 152 (citing N.Y. Educ. Law § 4404(1)-(2))).  "The purpose of the exhaustion rule is to 'channel disputes related to the education of disabled children into an administrative process that could apply administrators' expertise in the area and promptly resolve grievances.'" *Id*. (quoting *Polera v. Board of Education of Newburgh Enlarged City School District*, 288 F.3d 478, 487 (2d Cir.  2002), and citing *Heldman*, 962 F.2d at 159).  "Only after exhaustion of these procedures has an aggrieved party the right to file a suit in a federal or state court."  *Id*., 514 F.3d at 245 (citing 20 U.S.C. § 1415(i)(2)(A)).

Significantly, "[f]ailure to exhaust the administrative remedies deprives the court of subject matter jurisdiction."  *Cave*, 514 F.3d at 245 (citing *Polera*, 288 F.3d at 483).  *But see Coleman v. Newburgh Enlarged City School District*, 503 F.3d 198, 203-04 (2d Cir. 2007) (acknowledging that recent Supreme Court rulings, including *Eberhart v. United States*, 546 U.S. 12, 16 (2005), and *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004), have called into question whether the failure to exhaust administrative remedies under

the IDEA deprives the court of jurisdiction, or whether is an affirmative defense which

may be waived if not raised, but not reaching question because the defendants' had

consistently raised the plaintiff's failure to exhaust throughout the litigation).   Nor may a

plaintiff claiming deficiencies in an IDEA "bypass the IDEA's administrative exhaustion

rule merely by claiming money damages," which are not available under the IDEA.

*Cave*, 514 F3d at 247 (citing and quoting *Polera*, 288 F.3d at 486-88 ("a prayer for

damages does not enable a plaintiff to 'sidestep the exhaustion requirement of the

IDEA.'").

        Nevertheless, "[t]he exhaustion requirement is excused when exhaustion would

be futile because the administrative procedures do not provide an adequate remedy."

*Cave*, 514 F.3d at 249 (citing *Honig*, 484 U.S. at 327 (stating that "parents may bypass

the administrative process where exhaustion would be futile or inadequate")).   Such

futility may arise where "the agency either was acting in violation of the law or was

unable to remedy the alleged injury."   *Heldman*, 962 F.2d at 159.   The burden is on the

party seeking to avoid exhaustion to demonstrate futility.   *Polera*, 288 F.3d at 488 n. 8

(citing *Honig*, 484 U.S. at 327).   Under the circumstances of the instant case, Plaintiff

both has failed to exhaust administrative remedies, and has failed to demonstrate that

exhaustion of administrative remedies would have been futile.

        In particular, Plaintiff refused to participate in the remanded hearing before the

IHO, and also refused to consent to a reevaluation of N.S. for IHO Bumbalo's

consideration in rendering the IHO Remand Decision.   Plaintiff further failure to appeal

the IHO Remand Decision to the SRO prevented the SRO Decision from becoming

final.   As such, Plaintiff did not exhaust administrative remedies regarding the adequacy

of N.S.'s IEP for the 2006-2007 school year prior to commencing this action, and such failure to exhaust is fatal to her claims unless Plaintiff establishes it would have been futile to exhaust administrative remedies.  Although Plaintiff advised Bumbalo that the remanded IHO hearing would be futile because additional testimony from School District witnesses concerning the provision of pendency services for the 2006-2007 school year would not negate the need for commencing a legal action in federal court, but would prevent Plaintiff from commencing this action within the allotted time frame, May 9, 2008 letter at 1-2, such contention, upon this record, is merely speculative and, hence, insufficient to avoid summary judgment.

The test for futility is whether the agency was acting in violation of the law, or was unable to remedy the alleged injury, not whether the plaintiff is likely to receive the requested relief.  *Cave*, 514 F.3d at 249-50 (citing *Heldman*, 962 F.2d at 159).  Further, Plaintiff, as the party seeking to avoid exhaustion, bears the burden of demonstrating futility.  *Id*. (citing *Polera*, 288 F.3d at 488 n. 8).  In *Cave*, *supra*, the appellants, parents of a child with a disability, sued the CSE in federal district court under, *inter alia*, the IDEA, challenging the CSE's decision denying the request that the child's service dog be permitted to accompany the child to class.  *Cave*, 514 F.3d at 243-44.  The parents, however, did not first avail themselves of the administrative remedies specifically, requesting a due process hearing at which to present their complaints regarding the CSE's decision before an IHO and, if unsatisfied with the IHO's decision, appealing that decision to an SRO with the NYSED.  *Id*.  at 245.  The parents argued that the futility of the administrative remedies excused them from the exhaustion requirement because it was the school district's superintendent who made the initial decision recommendation

against allowing the service dog on the school's premises. *Id.* at 249.  As such, the parents maintained that the superintendent's recommendation "would allegedly control the outcome of subsequent administrative review procedures." *Id.*  The Second Circuit rejected the parents' argument stating "[w]eighty though this recommendation might have been at the initial stages of appellants' complaint against the school, there is not the slightest indication that the superintendent was in any position to affect, let alone control, the further determinations by local and state authorities." *Id.*  Moreover, "[a]bsent any evidence casting doubt on the impartiality of the local or the state review officers who would examine appellants' claims, [the court] cannot presume they would be biased [toward the school district]." *Id.*  The Second Circuit further observed that exhaustion of administrative remedies has been excused only where the nature of the complaint and the structure of the administrative review process  was incapable of correction through the administrative hearing process. *Id.*

Similarly, in the instant case, Plaintiff's assertion that participating in the remand IHO hearing with further evidence presented by School District witnesses would have been futile, "[a]bsent any evidence casting doubt on the impartiality" of the administrative review process, is merely speculative and provides the court with no reason to find Plaintiff exempt from complying with the administrative exhaustion requirements. *Cave*, 514 F.sd at 249.  Significantly, Plaintiff does not address the fact that SRO Kelly also ordered a reevaluation of N.S., the results of which would have been before IHO Bumbalo on remand, and may have altered Bumbalo's decision, possibly in Plaintiff's favor.  Because Plaintiff did not participate in the remanded hearing and, thus, did not present further testimony from any School District witnesses,

Plaintiff cannot definitively state what such testimony would have been or the impact such testimony would have had on the IHO Remand Decision.  In short, Plaintiff has failed to demonstrate that in this case, an exemption from the exhaustion requirements is warranted based on futility.  *Id*.  Nor could Plaintiff's participation in the IHO Remand Hearing prevented Plaintiff from timely filing the instant action because in the absence of the remanded hearing as directed by the SRO Decision, the SRO Decision never became final, such that the four months in which Plaintiff was required to commence this action was never triggered.

In particular, the instant action challenges the SRO Decision remanding the matter to IHO Bumbalo for further testimony and reevaluation of N.S., neither of which transpired because of Plaintiff's refusal to participate.  According, in the July 3, 2008 IHO Remand Decision,[7] based on Plaintiff's refusal to participate in the remanded hearing, IHO Bumbalo found the issues Plaintiff raised upon appeal to the SRO, and for which the SRO had provided Plaintiff an opportunity to call witnesses during the remanded hearing, had been rendered moot.  IHO Remand Decision at 2.  Significantly, the IHO Remand Decision further advised Plaintiff of her right to appeal the IHO Remand Decision to the SRO and the time in which to do so.  *Id*.  at 2-3.  Moreover, N.Y. Educ. Law § 4404[3](a) specifically provides for review in this court only of a final SRO Decision, the rendering of which triggers the four months limitations period in which to seek such review.  Because Plaintiff never appealed to IHO Remand Decision to the SRO, no final SRO Decision was ever issued, such that Plaintiff failed to exhaust

---

[7] Defendant's Exh. B.

administrative remedies.  Furthermore, because the time in which Plaintiff had to appeal the SRO Decision pursuant to 8 N.Y.C.R.R. § 200.5(j), has since expired, Plaintiff has defaulted on her claims against the School District in this action.

Accordingly, Defendant's motion should be GRANTED as to the request for summary judgment based on Plaintiff's failure to exhaust administrative remedies. Because, however, this action is before the undersigned for a report and recommendation, Defendant's alternative arguments are addressed in the interest of completeness.

## 2.      Monetary Damages

Defendant asserts that insofar as Plaintiff seeks monetary damages in connection with this action, such damages are unavailable under the IDEA. Defendant's Memorandum at 10-11.  Plaintiff has not responded in opposition to this argument.

It is settled that pecuniary damages are unavailable under the IDEA.  *Cave*, 514 F.3d at 247 (citing *Polera*, 288 F.3d at 483-86).  Plaintiff points to no legal authority supporting her request for monetary damages in this IDEA action.  As such, insofar as Defendant seeks summary judgment dismissing Plaintiff's claim for monetary damages, Defendant's motion should be GRANTED.

## 3.      Deference to SRO's Decision

The School District urges the court to accord substantial deference to the SRO Decision given the SRO's expertise in deciding disputes under the IDEA, and that the

SRO Decision was both reasonable and grounded in established law.  Defendant's

Memorandum at 11.  Plaintiff has not argued in opposition.

### A.    Mootness

The School District argues that because at issue in the instant case is Plaintiff's

disagreement with the proposed 2006-2007 IEP, which was never implemented and

has been superseded by a subsequent IEP developed two weeks before the impartial

hearing commenced on June 29, 2007, Plaintiff's challenges to the 2006-2007 IEP

have been rendered moot.  Defendant's Memorandum at 12.  As such, the School

District maintains that no controversy regarding the 2006-2007 IEP remains ripe for

judicial review.  *Id*.  Plaintiff, who has not responded in opposition to summary

judgment, does not otherwise dispute these assertions.

It is axiomatic that "'at its uncontroverted core lies the principle that, at all times,

the dispute before the court must be real and live, not feigned, academic, or

conjectural.'"  *Lillbask v. State of Connecticut Department of Education*, 397 F.3d 77, 84

(2d Cir. 2005) (quoting *Russman v. Board of Education*, 260 F.3d 114, 118 (2d Cir.

2001)).  "When the issues in dispute between the parties 'are no longer live,' a case

becomes moot, and the court – whether trial, appellate, or Supreme – loses jurisdiction

over the suit, which therefore must be dismissed."  *Id*. (citing *Powell v. McCormack*, 395

U.S. 486, 496 (1969), and *Russman*, 260 F.3d at 118-19 (internal quotation marks

omitted)).  "The Supreme Court has recognized an exception, however, where the

dispute is 'capable of repetition, yet evading review.'"  *Russman*, 260 F.3d at 119

(quoting *Southern Pacific Terminal Company v. Interstate Commerce Commission*, 219

U.S. 498, 515 (1911)).  The so-called "capable-of-repetition principle" applies "only 'where the following two circumstances are simultaneously present: (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again.'"  *Id*. (quoting *Spencer v. Kemma*, 523 U.S. 1, 17 (1998)).  "A recurrent dispute will 'evade review' if it could not be entirely litigated before again becoming moot, including prosecution of appeals as far as the Supreme Court."  *Id*. (quoting *Honig*, 484 U.S. at 322-23).  In light of these strictures, the mootness exception "applies only in exceptional situations, and is severely circumscribed."  *Russman*, 260 F.3d at 119 (internal citations and quotation marks omitted).  As relevant to the instant case, because the administrative and judicial review of an IEP often takes more than the nine months that any given school year is in session such that the review is not complete until after the IEP has expired, courts generally conclude an IEP dispute satisfies the first criteria for avoiding a mootness dismissal.  *Lillbask*, 397 F.3d at 85 (citing cases).  Thus, the court does likewise, and turns to the second criteria.

"Although a plaintiff need not show a 'demonstrated probability' of recurrence, there must be at least a 'reasonable expectation' of repetition."  *Russman*, 260 F.3d at 120 (quoting *Honig*, 484 U.S. at 318 and n. 6).  The creation of a reasonable expectation of recurrence requires repetition be more than a theoretical possibility. Significantly, "'mere speculation that the parties will be involved in a dispute over the same issues does not rise to the level of a reasonable expectation or demonstrated probability of recurrence.'" *Id*.  (quoting *Dennin v. Connecticut Interscholastic Athletic Conference, Inc.*, 94 F.3d 96, 101 (2d Cir.  1996)).

Here, based on the administrative record, and in the absence of any response by Plaintiff in opposition to Defendant's motion, the court considers whether the fact that Plaintiff has repeatedly challenged N.S.'s IEP for each school year since the 2002-2003 academic year, such that N.S. has remained in a pendency placement since 2003, establishes the requisite "reasonable expectation" of repetition, to avoid mootness, and concludes it does not.  A finding that Plaintiff has repeatedly challenged N.S.'s IEP would be based on a presumption that Plaintiff will necessarily commence an administrative challenge to each IEP developed for N.S., regardless of what is recommended by the CSE, an assertion the Second Circuit has explicitly rejected as too broad a reading of *Honig*.  *Lillbask*, 397 F.3d at 86 (observing the Second Circuit requires a probability, rather than a possibility, that repetition will occur).  Furthermore, a reevaluation of N.S., which Plaintiff has continued to prevent, could significantly impact what the CSE recommends in a future IEP for N.S. A party may not, by its own conduct, create the appearance of an actual controversy in order to avoid mootness.  *See Russman*, 260 F.3d at 121 (plaintiffs offer of "only surmise" did not establish reasonable expectation of repetition).  Accordingly, Defendant's motion should be GRANTED on the basis that Plaintiff's claim is moot.

**B.     Bias and Retaliation**

The School District seeks summary judgment Insofar as Plaintiff alleges, Complaint at 6, the SRO Decision is erroneous because it was influenced by SRO Kelly's alleged "dislike" for Plaintiff and bias toward school districts, Complaint at 6, given Plaintiff's failure to point to any evidence supporting such assertion.  Defendant's

Memorandum at 15.   The School District further maintains Plaintiff's claim of bias is undermined by SRO Kelly's  remanding the matter to the IHO to reconvene the impartial hearing to permit Plaintiff to introduce additional evidence in support of the substantive claims. *Id*.  at 15-16.  Defendant's argument is unopposed given Plaintiff's failure to respond in opposition to summary judgment.

As discussed in connection with Plaintiff's failure to exhaust administrative remedies on the basis that exhaustion would have been futile, Discussion, *supra*, at 12-16, the assertion that the administrative decision would be biased is, in the absence of any evidence casting doubt on the SRO's impartiality's, "merely speculative." *Cave*, 514 F.3d at 249.   Here, Plaintiff, by not responding in opposition to Defendant's motion, has failed to submit any evidence which, if true, could establish a genuine issue of material fact as to whether SRO Kelly was, in fact, biased toward the School District. Rather, a plain reading of the SRO Decision establishes the decision is based on an uncontroverted recitation of the facts regarding N.S. and his educational placements to date, along with the progress N.S. has made as a result of his education, and the relevant statues, regulations, and case law.  SRO Decision, *passim*.  Simply put, the SRO Decision is completely devoid of any statements indicating SRO Kelly was impartial or biased toward Defendant.  As such, Plaintiff has failed to meet her burden of establishing the SRO Decision was unduly influenced by SRO Kelly's dislike for Plaintiff.  Plaintiff may well have reasons to believe in the SRO's purported anti-parent bias, but they have not been provided in this record.

This aspect of Defendant's motion should be GRANTED.

### C.      Consent for Re-Evaluation of N.S.

The School District argues in support of summary judgment that SRO Kelly's order directing N.S. undergo a reevaluation was in compliance with the IDEA's requirement that school district reevaluate students with disabilities at least once every three years, yet Plaintiff repeatedly has refused to consent to a reevaluation. Defendant's Memorandum at 16.  Plaintiff's steadfast refusal to consent to such reevaluation remains unexplained.  Significantly, parents "must be informed about and consent to evaluations of their child under the Act."  *Schaffer v.  Weast*, 546 U.S. 49, 53 (2005) (citing 20 U.S.C. § 1414(d)(1)(B) (requiring parental consent for initial evaluation).  *See* 20 U.S.C. § 1414(c)(3)(requiring local educational agency to obtain informed parental consent prior to conducting any reevaluation of a child with a disability, unless the local educational agency demonstrates it has taken reasonable measures to obtain such consent and the child's parent has failed to respond).

The IDEA permits a federal district court reviewing an SRO Decision to, based on a preponderance of the administrative proceedings records and any additional evidence presented by the parties, "grant such relief as the court determines is appropriate."  20 U.S.C. § 1415(i)(2)(C)(iii).  The Supreme Court has construed § 1415(i)(2)(C)(iii) as "confer[ring] broad discretion on the court" and directed that, "absent any indication to the contrary, what relief is 'appropriate' must be determined in light of the Act's broad purpose of providing children with disabilities a FAPE . . . ." *Forest Grove School District v. T.A.*, __ U.S. __, 129 S.Ct.  2484, 2490-91 (2009).  In the instant case, the record establishes that insofar as the SRO Decision ordered N.S. to undergo a reevaluation, such reevaluation is in the best interest of N.S., given that

N.S., as SRO Kelly noted in the SRO Decision, was never definitively diagnosed with

autism but, rather, the clinical impressions from N.S.'s last evaluation, when N.S. was

six years old, were merely "suggestive" of an "autistic disorder."  SRO Decision at 2 and

n. 1.  SRO Kelly particularly observed that N.S. has been the subject of seven previous

appeals to the NYSED during which it was noted "that there is limited information

regarding the student's clinical diagnoses [*sic*] and this same issue remains in the

present appeal," citing in support of this observation his previous SRO Decision, issued

in connection with SRO Appeal No. 07-007 ("SRO Appeal Decision No.  07-007"), at 2,

n. 2)[8]).  With regard to SRO Appeal Decision No.  07-007, SRO Kelly specifically noted

the absence of any definitive diagnosis of N.S.'s disability.  In particular, although N.S.'s

> eligibility for special education programs as a student with a disability is not in
> dispute in this appeal . . . [and] the record contains 267 exhibits, there is limited
> information regarding the student's clinical diagnoses [*sic*].  With the exception of
> reports from private evaluators which were completed after the CSE convened,
> and in an attempt to develop a 2005-06 individualized education program (IEP)
> for the student, most of the available reports are dated 2004 or earlier.  An
> independent functional behavioral assessment (FBA) conducted in March 2006
> referred to a report of an evaluation by a developmental pediatrician completed
> in July 2000 which provides impression of PDD NOS (Pervasive Developmental
> Disorder Not Otherwise Specified).  The neuropsychologist who conducted the
> FBA noted that the developmental pediatrician's report "specifically states his
> language and behavioral problems are too severe for him to be considered as an
> Asperger's Disorder.  At the same time, he clearly does not meet full criteria for a
> diagnosis of Autistic Disorder."  The record does not contain any additional
> information indicating that these clinical impressions, offered when the student
> was six years old, were subsequently supported by a definitive diagnosis.  A
> Child Behavior Checklist completed in March 2006 by the student's special
> education teacher yielded scores in the borderline clinical range (93rd to 97th
> percentiles) on scales for anxiety and attention deficit/hyperactivity problems,
> with his subscale score for inattention in the normal range and his score for

---

[8] A copy of SRO Decision Appeal No.  07-007 is attached as an exhibit to the Complaint in a
separate action Plaintiff filed challenging N.S.'s IEP for the 2005-2006 school year, *B.J.S. v. State
Education Department/University of the State of New York*, 07-CV-456A(F).

hyperactivity identified as "high enough to warrant concern."  The same report yielded scores in the clinical range (above the 97th percentile) for oppositional defiant and conduct problems and suggests consultation to determine whether the student would meet diagnostic criteria for these disorders.

SRO Appeal Decision No.  07-007 at 2, n. 2 (internal citations omitted).

To reiterate, despite a lack of clarity as to N.S.'s precise disability, as well as SRO

Kelly's order, Plaintiff has consistently refused to consent to a reevaluation of N.S.

Pursuant to N.Y. Educ. Law § 4404[1][d][1], the commissioner is authorized to

promulgate regulations establishing and governing the administrative hearing process

by which a disabled student's IEP may be challenged.   As relevant, 8 N.Y.C.R.R. §

200.5(g)(2) permits an IHO to request an independent educational evaluation in

connection with an impartial due process hearing.  Furthermore, the federal regulations

promulgated pursuant to the IDEA and governing a state's receipt of federal funds to

implement the IDEA require that each child with a disability be reevaluated "at least

once every 3 years, unless the parent and the public agency agree that a reevaluation

is unnecessary."  34 C.F.R. § 300.303(b)(2).  Significantly, in the instant case, Plainitff,

by refusing to consent to or otherwise cooperate with a reevaluation of N.S., has

indicated the parent and the public agency do not agree that reevaluation is

unnecessary.

Accordingly, SRO Kelly's remand for further hearing, accompanied by a

reevaluation of N.S. to obtain a proper clinical diagnosis for N.S.'s disability, is

appropriate both in light of the absence of any definitive diagnosis as to N.S.'s precise

disability, as well as the regulatory requirement that a disabled child receiving special

educational services pursuant to the IDEA be reevaluated at least once every three

years.  Here, because N.S. has never been reevaluated, and has educated pursuant to an IEP for more than six years, a reevaluation is overdue and required.  The SRO Decision's remanding the matter for a reconvened hearing based on new evidence, including a new evaluation of N.S., was thus appropriate.


## **CONCLUSION**

Based on the foregoing, Defendant School District's motion for summary judgment (Doc. No. 69), should be GRANTED.


Respectfully submitted,


_____ /s/ *Leslie G.  Foschio* _____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


DATED:        August   31  , 2011
                    Buffalo, New York

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

_____ /s/ *Leslie G.  Foschio*_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:        August  31, 2011
              Buffalo, New York